STATE OF HAWAII, Plaintiff-Appellee, *v.* CLARENCE DANIEL FREITAS, III, Defendant-Appellant

NO. 6549

MARCH 21, 1980

RICHARDSON, C.J., OGATA, MENOR, JJ., RETIRED JUSTICE MARUMOTO AND CIRCUIT JUDGE LUM, ASSIGNED BY REASON OF VACANCIES

18

OPINION OF THE COURT BY MENOR, J.

The defendant was indicted for murder. After a bifurcated trial, he was found guilty of manslaughter by a jury which also found him to be legally responsible for his conduct. He appeals from the judgment and sentence of the trial court. At issue is whether the trial court erred in denying his pre-trial motion for judgment of acquittal made pursuant to HRS § 704-408 which provides:

>     If the report of the examiners filed pursuant to section 704-404 states that the defendant at the time of the conduct alleged suffered from a physical or mental disease, disorder, or defect which substantially impaired his capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law, and

the court, after a hearing if a hearing is requested, is satisfied that such impairment was sufficient to exclude responsibility, the court, on motion of the defendant, shall enter judgment of acquittal on the ground of physical or mental disease, disorder, or defect excluding responsibility.

Acting upon the defendant's request the trial court had, in accordance with the provisions of HRS § 704-404, appointed a three-member sanity commission composed of Dr. Barthel, Dr Collis, and Dr. Murphy. The panel unanimously found (1) that the defendant had the present capacity to understand the proceedings against him and to assist in his own defense, and (2) that his capacity to appreciate the wrongfulness of his conduct and to conform his conduct to the requirements of the law were substantially impaired at the time of the conduct alleged. This latter finding was predicated upon the following factors: (1) non-psychotic brain syndrome, (2) antisocial personality, and (3) habitual excessive drinking.

At the hearing on the motion for judgment of acquittal, Dr. Barthel testified that these three variables were necessarily interrelated and collectively created the mental condition which rendered the defendant substantially incapable of appreciating the wrongfulness of his conduct or of conforming his conduct to the requirements of the law. He emphasized that the factors which comprised their diagnosis were indispensable to each other and could not be separately examined and weighed for their individual effect upon the defendant's state of mind at the time of the commission of the offense. Dr. Collis and Dr. Murphy, who were both present at the hearing, concurred with Dr. Barthel.

In denying the defendant's motion for judgment of acquittal, the trial court was apparently disturbed by the inclusion of excessive drinking as a factor in the commission's determination. We think that the trial court was properly concerned. What constitutes a mental disorder or defect for psychiatric-psychological treatment purposes is not necessarily the same as a disorder or defect for the jury's purpose in determining criminal responsibility. *State v. Nuetzel,* 61 Haw. 531, 606 P.2d 920 (1980).

HRS § 702-230(2) provides that self-induced intoxication "does not, in itself, constitute a physical or mental disease, disorder, or defect within the meaning of section 704-400."[1] It may be a symptom of a disease, disorder, or defect which could exclude responsibility. Or it may be the catalyst that could trigger an individual's latent antisocial tendencies. Certainly, it may constitute evidence "to prove or negative the conduct alleged or the state of mind sufficient to establish an element of the offense." HRS § 702-230(1). It, however, is not the exculpating physical or mental condition contemplated by the statute.[2] *See* Commentary on HRS § 702-230; *Kane v. United States*, 399 F.2d 730 (9th Cir. 1968), *cert. denied*, 393 U.S. 1057; *United States v. Burnim*, 576 F.2d 236 (9th Cir. 1978). Neither should it be considered a substantial factor in determining legal competency, for a mental disability excusing criminal responsibility must be the product of circumstances beyond the control of the defendant. *Kane v. United States, supra.* Self-induced intoxication is not such a disability. A case in point is *United States v. Burnim, supra.* There the defendant was placed on trial for robbery. His sole defense was insanity. The defendant was suffering from an organic brain defect, and prior to the commission of the crime charged he had consumed a large amount of liquor to bolster his courage. The trial court found from expert medical testimony that both brain defect and alcohol had combined to render the defendant incapable of appreciating the wrongfulness of his conduct and of conforming his conduct to the

---

[1] HRS § 704-400(1) provides:

A person is not responsible, under this Code, for conduct if at the time of the conduct as a result of physical or mental disease, disorder, or defect he lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law.

[2] No suggestion is made that the defendant's intoxication at the time of the commission of the offense was not self-induced or that it was pathological. "Pathological intoxication" which means "intoxication grossly excessive in degree, given the amount of the intoxicant, to which the defendant does not know he is susceptible and which results from a physical abnormality of the defendant," would be a defense. HRS § 702-230(3) and (4)(c).

requirements of the law. It, however, eliminated the effects of alcohol as a factor and found that the brain defect alone was not sufficient to exclude penal responsibility. The Ninth Circuit Court of Appeals affirmed and observed that it was obligatory upon the trial court to disregard whatever incapacitating effects were attributable to the defendant's voluntary ingestion of alcohol in determining whether, at the time of the conduct charged, the accused was suffering from a disability that would excuse his criminal conduct.

The standard by which a motion for judgment of acquittal on the grounds of physical or mental irresponsibility is to be determined is whether upon the evidence, viewed in the light most favorable to the government, and giving full play to the right of the jury to determine credibility, weigh the evidence, and draw therefrom justifiable inferences of fact, a jury might fairly and rationally conclude that the accused was sane beyond a reasonable doubt. *State v. Nuetzel, supra.* If the evidence on the issue is such that a jury must necessarily have a reasonable doubt as to the defendant's sanity at the time of the commission of the offense, the defendant is entitled to a judgment of acquittal. *State v. Nuetzel, supra; United States v. Westerhausen,* 283 F.2d 844 (7th Cir. 1960). Where, however, the evidence is such that a jury might fairly have or not have a reasonable doubt as to the defendant's sanity, the issue becomes a question of fact for the jury, and the motion for judgment of acquittal will be denied. Stated another way, it is only when there is no evidence upon which the jury might fairly find the defendant sane beyond a reasonable doubt that the motion will be granted.

Judged by these standards, the defendant's motion for judgment of acquittal was properly denied. The facts shown by the record are sparse.[3] It does show, however, that the

---

[3] Because the matter before the trial court in this case was a pre-trial motion and the statute, HRS § 704-408, does not contemplate a full-fledged trial on the issue of insanity, the record is less than complete as regards facts and circumstances bearing upon the issue. The trial court, therefore, had to rely primarily upon the commission's report and medical testimony to make the determination of whether it should take the factual issue of physical or mental irresponsibility away from the jury. At a

defendant and the victim had been engaged in an argument prior to the incident out of which the charge against the defendant arose. The victim thereafter left the scene. An hour later, while he and his friends were in the Waikiki area, he was again confronted by the defendant who proceeded to assault him with a tire or bumper jack. The defendant had been drinking prior to the incident. Approximately two weeks after the killing, the defendant gave a statement to the police describing in remarkable detail his actions hours before the victim was killed and the circumstances surrounding the assault, including the number of times he struck the victim with the weapon. These were facts especially relevant to the issue of mental competency, particularly because of the inconclusive nature of expert testimony in this case.[4] Since the inseparability and the interdependency of the three compo-

---

pre-trial hearing under HRS § 704-408, the trial court may have recourse to governmental records, such as police reports, to aid it in making its determination so long as the information contained therein, and relied upon by the trial court, would have been probably admissible and properly to be considered by a jury trying the issue, and so long as the defendant and his counsel are allowed access to the same material and information. This would also include material in the custody of the government utilized by the medical experts to aid them in making their determinations. And because the trial court must first satisfy itself that the defendant's impaired capacity was such as to exclude penal responsibility before removing the issue from a jury's consideration, the scope and extent of its examination of the witnesses must necessarily be of some latitude.

[4] According to expert testimony, the organic brain syndrome, in and of itself, was mild. The antisocial aspects of his personality were more severe. Nevertheless, it was the combination of all three factors in the diagnosis that led to the finding of substantial lack of capacity. That the ingestion of alcohol was a major consideration is evident from Dr. Barthel's testimony:

THE COURT: You're saying that he couldn't, he didn't know that what he was doing was wrong?

THE WITNESS: That his capacity to appreciate it was substantially impaired, yes, because in addition to what the information you've given, we also have the information that he'd been heavily drinking for 24 hours or longer prior to that. There had been ingestion of various kinds of other substances. That those things in conjunction with the brain syndrome were having accumulative (sic) effect to the point where what he was doing reflected a very serious impairment of his judgment. And he didn't have — at that point his capacity was severely impaired.

It was improper for the panel of experts to rely upon voluntary intoxication as a basis for their determinations. United States v. Burnim, *supra*.

nents of their diagnosis were central to their ultimate conclusion that the defendant was not responsible for his conduct, the medical experts were unable to say with any reasonable degree of medical certainty to what extent the defendant's capacity would have been impaired at the time of the commission of the offense, if the fact of alcohol ingestion were excluded from their consideration. Under these circumstances, the evidence before the trial court was not such that a jury must necessarily possess a reasonable doubt as to the defendant's legal capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law.

While no expert testimony was presented by the State to counter the defendant's evidence of mental irresponsibility, no such rebutting testimony was required by reason of the inherent weakness of the defendant's expert evidence. The quantum and nature of rebuttal evidence varies in different situations and will depend to some extent upon the quantum and nature of the evidence presented by the defendant on the issue of insanity. *State v. Nuetzel, supra.* The findings of an expert are always entitled to serious consideration by the trier of fact, but the weight the factfinder gives to expert evidence is dependent upon its own assessment of the facts upon which the expert's opinion is predicated, upon the validity of the expert's assumptions, upon the reliability of the diagnostic and analytical processes by which the expert arrived at his determinations, and upon all other facts and circumstances bearing upon the issue. *U.S. v. McCracken*, 488 F.2d 406 (5th Cir. 1974); *see also Mims v. United States*, 375 F.2d 135 (5th Cir. 1967).

The statute excuses penal conduct where, by reason of a physical or mental disease, disorder, or defect, the defendant *"lacks substantial capacity*[5] either to appreciate the wrong-

---

[5] The phrase "lacks substantial capacity" is incapable of precise definition, but this court in State v. Neutzel, *supra*, has not found the following instruction to be objectionable:

The phrase lack of substantial capacity does not mean a total lack of capacity. It means capacity which has been impaired to such a degree that only an extremely limited amount remains.

24

fulness of his conduct or to conform his conduct to the requirements of law." HRS § 704-400(1). (Emphasis added). Given the existence of a physical or mental disability, the crucial factual issue becomes whether and to what extent the defendant's cognitive or volitional capacity was impaired by reason of the disease, disorder, or defect. If the impairment was substantial, the jury must return a verdict of not guilty by reason of insanity. If there was no impairment, or if the impairment was not substantial, a fair-minded jury would find the defendant sane beyond a reasonable doubt. It was precisely this factual issue which, in the circumstances of this case, the trial court could not remove from the jury's consideration.

Affirmed.

*Kenneth T. Okamoto*, Deputy Public Defender for defendant-appellant.

*Janice T. Futa*, Deputy Prosecuting Attorney for plaintiff-appellee.