**STATE OF HAWAII, Plaintiff-Appellee, *v.* THOMAS P. SUMMERS, also known as Thomas J. Summers and Thomas James Patrick Summers, Defendant-Appellant**

NO. 7006

JULY 15, 1980

RICHARDSON, C.J., OGATA, MENOR, LUM, NAKAMURA, JJ.

OPINION OF THE COURT BY LUM. J.

This is an appeal by defendant Thomas P. Summers (appellant) from a conviction of the offense of carrying firearm on person without permit or license in violation of HRS § 134-9. We affirm.

The trial court, acting upon appellant's request and in accordance with the provisions of HRS § 704-404, appointed a three-member sanity commission composed of Drs. Ko, Presbrey and Barthel. The commission unanimously found: (1) appellant had the capacity to understand the proceedings against him and to assist in his own defense; and (2) at the time of the alleged offense, appellant's mental disorder substantially impaired his capacity to know what he was doing was wrong and his capacity to control himself from committing the particular offense. This latter finding was based on the following diagnosis: (1) schizophrenia reaction, paranoid

type; and (2) hysterical neurosis (or multiple personality), except that Dr. Ko ruled out hysterical neurosis.

Based upon the commission's findings, appellant made a pre-trial motion for judgment of acquittal. After a hearing on the motion was held in which the three commission doctors testified as to their findings, the trial court was "not convinced entirely" that appellant was substantially impaired so as to exclude penal responsibility and, accordingly, denied the pre-trial motion. Appellant was subsequently convicted after a trial by jury. Two days after his conviction, appellant renewed his motion for judgment of acquittal which was again denied.

Appellant raises four issues on appeal, for which we need consider only three, the other being without merit.

I.

Appellant first contends that the trial court erred when it denied his pre-trial motion for judgment of acquittal made pursuant to HRS § 704-408.[1] We find, however, that the testimony adduced at the hearing on this motion gave the trial court sufficient reasons to deny appellant's pre-trial motion.

We recently held in *State v. Freitas*, 62 Haw. 17, 21, 608 P.2d 408, 411 (1980), that:

The standards by which a motion for judgment of acquittal on the grounds of physical or mental irresponsibility is to be determined is whether upon the evidence, viewed in the light most favorable to the government, and giving full play to the right of the jury to determine credi-

---

[1] HRS § 704-408 provides:

If the report of the examiners filed pursuant to section 704-404 states that the defendant at the time of the conduct alleged suffered from a physical or mental disease, disorder, or defect which substantially impaired his capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law, and the court, after a hearing if a hearing is requested, is satisfied that such impairment was sufficient to exclude responsibility, the court, on motion of the defendant, shall enter judgment of acquittal on the ground of physical or mental disease, disorder, or defect excluding responsibility.

bility, weigh the evidence, and draw therefrom justifiable inferences of fact, a jury might fairly and rationally conclude that the accused was sane beyond a reasonable doubt.

We further stated in *Freitas* that:

If the evidence on the issue is such that a jury must necessarily have a reasonable doubt as to the defendant's sanity at the time of the commission of the offense, the defendant is entitled to a judgment of acquittal. *State v. Nuetzel, supra; United States v. Westerhausen,* 283 F.2d 844 (7th Cir. 1960). Where, however, the evidence is such that a jury might fairly have or not have a reasonable doubt as to the defendant's sanity, the issue becomes a question of fact for the jury, and the motion for judgment of acquittal will be denied. Stated another way, it is only when there is no evidence upon which the jury might fairly find the defendant sane beyond a reasonable doubt that the motion will be granted.

*Id.* at 21, 608 P.2d at 411.

The record reveals that appellant proffered the testimony of the three doctors of the sanity commission at the pre-trial hearing, while the State introduced no expert testimony. Whereas the findings of an expert are always entitled to serious consideration by the trier of fact,

the weight the factfinder gives to expert evidence is dependent upon its own assessment of the facts upon which the expert's opinion is predicated, upon the validity of the expert's assumptions, upon the reliability of the diagnostic and analytical processes by which the expert arrived at his determinations, and upon all other facts and circumstances bearing upon the issue.

*Id.* at 23, 608 P.2d at 412; *United States v. McCracken,* 488 F.2d 406 (5th Cir. 1974); *see also Mims v. United States,* 375 F.2d 135 (5th Cir. 1967). Looking to the doctors' testimony at the pre-trial hearing, it is evident that it was precisely on account of the fact-finding issue which bore on the weight to be accorded the experts' conclusions that the trial court could not remove the insanity question from the jury's consideration.

Dr. Ko's testimony was not free from questions affecting the weight to be accorded by the jury to his conclusions on appellant's mental condition. Dr. Ko stated that he had examined appellant some seven months after the offense and he had found, *inter alia*, that at that time, appellant's mental condition was stable. Thus, Dr. Ko proffered, in order for him to reach his conclusion concerning appellant's mental condition at the time of the offense, he had to rely "heavily" upon the history and opinion furnished to him by Dr. Amjadi who had been appellant's therapist sometime in the past. But, upon cross-examination, Dr. Ko was uncertain whether appellant was being treated by Dr. Amjadi at the time of the offense. Dr. Amjadi was never called to testify.

The other doctors also examined appellant at the time Dr. Ko did and reached a similar conclusion that appellant's condition was stable. They, too, had to rely somewhat upon the hearsay statement of Dr. Amjadi to arrive at their diagnoses of appellant's condition at the time of the offense, and both were uncertain whether appellant was being treated by Dr. Amjadi at the time of the offense. Therefore, the diagnoses made by the other doctors concerning appellant's mental condition at the time of the offense, in light of the hearsay reliance, likewise had to be assessed by the jury for their proper weight.

All three doctors based their diagnoses in part upon the fact that appellant had claimed he could not remember his action of carrying the unregistered firearm, but he could remember events prior to and after the offense. Since a jury might reject appellant's claim of amnesia, the basis upon which the doctors rested their diagnoses would be seriously shaken.

We hold, therefore, that the question of appellant's insanity was a question properly for the jury's consideration.

II.

Appellant next contends that the trial court erred when it denied his post-trial motion for judgment of acquittal made

pursuant to Rule 29(c) of the Hawaii Rules of Penal Procedure.[2] In his post-trial motion, appellant again raised the issue of his sanity at the time of the offense and argued that there was no factual basis upon which a jury could conclude beyond a reasonable doubt that appellant was penally responsible. We do not agree.

The standard by which the judge is to be guided in passing on a motion for judgment of acquittal is the same regardless of whether the motion is made before submission of the case to the jury or after the jury has returned a verdict. Wright, Federal Practice and Procedure: Criminal §§ 465, 467.

At trial, the commission doctors presented essentially the same testimony they gave at the pre-trial hearing and the State, again, presented no rebuttal expert testimony. However, additional information brought out could affect the weight to be given by the jury to the experts' conclusions, and thus, ultimately, affect the validity of appellant's claim of insanity.

Although all three doctors characterized appellant's diagnosis as schizophrenia paranoid type, they disagreed as to whether appellant suffered from a multiple personality disorder. Dr. Ko ruled out that diagnosis; Dr. Presbrey stated it was a possibility; and Dr. Barthel found it to be appellant's primary disorder. Furthermore, as previously noted, during the interviews with the doctors some seven months after the offense, appellant's condition was stable. This condition required the doctors to base their diagnoses to some extent on the narrative information supplied by appellant. Both Dr.

---

[2] Rule 29(c) of the Hawaii Rules of Penal Procedure states:

If the jury returns a verdict of guilty or is discharged without having returned a verdict, a motion for judgment of acquittal may be made or renewed within 10 days after the jury is discharged or within such further time as the court may fix during the 10-day period. If a verdict of guilty is returned the court may on such motion set aside the verdict and enter judgment of acquittal. If no verdict is returned the court may enter judgment of acquittal. It shall not be necessary to the making of such a motion that a similar motion has been made prior to the submission of the case to the jury.

This rule is patterned after the Federal Rules of Criminal Procedure. See Notes to Rule 29, Proposed Hawaii Rules of Penal Procedure (1975).

Presbrey and Dr. Barthel admitted that their diagnoses were partly dependent upon appellant telling them the truth; and according to Dr. Barthel, appellant was intelligent and capable of making up a false story.

Dr. Presbrey also stated that appellant's attempt to flee would be consistent with his knowledge that what he was doing was wrong. Dr. Presbrey conceded on cross-examination that, even assuming that he was correct in his diagnosis of appellant's mental disorders, it was possible that appellant could still be mentally responsible for his actions.

Other portions of Dr. Barthel's testimony might also have created reasonable doubt in the mind of the jury. He testified that his primary diagnosis of appellant having a multiple personality disorder was based largely upon: (1) information transferred to him by a hypnotherapist whose qualifications he did not know of; (2) appellant's characterization of a twin brother who "epitomized everything that was wrong" or bad, a personality which neither Dr. Barthel nor the other doctors ever saw; and (3) his own "intuition."

Dr. Barthel further stated that it was a "tremendous problem" trying to determine a person's mental disorder six or seven months earlier.

Judged by the standards which we have adopted in this jurisdiction and reiterated in part I of this opinion, we find that the testimony adduced at trial gave the trial court sufficient reasons to believe that a jury might fairly and rationally conclude that the accused was sane beyond a reasonable doubt and to deny appellant's post-trial motion.

III.

Appellant next contends that there was insufficient evidence to support the jury's verdict of appellant's guilt beyond a reasonable doubt, specifically, as it applies to appellant's sanity.

It is well established in this jurisdiction that "[o]n appeal, the test to ascertain the legal sufficiency of the evidence is whether, viewing the evidence in the light most favorable to

the State, there is substantial evidence to support the conclusion of the trier of fact." *State v. Hernandez*, 61 Haw. 475, 477, 605 P.2d 75, 77 (1980); *State v. Hopkins*, 60 Haw. 540, 542, 592 P.2d 810, 811 (1979); *State v. Smith*, 59 Haw. 456, 464, 583 P.2d 337, 343 (1978); *State v. Laurie*, 56 Haw. 664, 672-73, 548 P.2d 271, 277-78 (1976); *State v. Cannon*, 56 Haw. 161, 166, 532 P.2d 391, 396 (1975); *State v. Cummings*, 49 Haw. 522, 532-33, 423 P.2d 438, 445 (1967); *State v. Tamanaha*, 46 Haw. 245, 251, 377 P.2d 688, 692 (1962), *reh. denied*, 46 Haw. 345, 379 P.2d 592 (1962). "It matters not if a conviction under the evidence as so considered might be deemed to be against the weight of the evidence so long as there is substantial evidence tending to support the requisite findings for conviction." *State v. Hernandez, supra* at 478, 605 P.2d at 77; *State v. Smith, supra* at 464, 583 P.2d at 343; *State v. Cummings, supra* at 533, 423 P.2d at 445. The jury, as the trier of fact, is the sole judge of the credibility of witnesses or the weight of the evidence. *State v. Kekaualua*, 50 Haw. 130, 133, 433 P.2d 131, 133 (1967); *State v. Carvelo*, 45 Haw. 16, 33, 361 P.2d 45, 54 (1961).

At trial, appellant offered the testimony of the three doctors, as has been previously recounted, to support his claim of insanity. Although expert testimony cannot be arbitrarily ignored on the issue of appellant's sanity, it is not binding upon the jury. *United States v. Harper*, 450 F.2d 1032, 1037 (5th Cir. 1971); *Mims v. United States, supra*. And while the State did not present any expert testimony to counter appellant's evidence of mental irresponsibility, the State need not in all cases introduce expert testimony to sustain its burden of proof on the question of sanity. *United States v. McCracken, supra* at 410. *Accord, State v. Freitas, supra; State v. Nuetzel, supra*. "The quantum and nature of rebuttal evidence varies in different situations and will depend to some extent upon the quantum and nature of the evidence presented by the defendant on the issue of insanity." *State v. Freitas, supra* at 23, 608 P.2d at 412; *State v. Nuetzel, supra*. As the Fifth Circuit in *Mims v. United States, supra* at 143-144, stated:

[E]xpert opinion evidence may be rebutted by showing the incorrectness or inadequacy of the factual assump-

tions on which the opinion is based, "the reasoning by which he progresses from his material to his conclusion," the interest or bias of the expert, inconsistencies or contradictions in his testimony as to material matters, material variations between the experts themselves, and defendant's lack of co-operation with the expert. Also, in cases involving opinions of medical experts, the probative force of that character of testimony is lessened where it is predicated on subjective symptoms, or where it is based on narrative statements to the expert as to the past events not in evidence at the trial. In some cases, the cross-examination of the expert may be such as to justify the trier of facts in not being convinced by him.

(Footnotes omitted.)

We find that upon application of the testimony adduced at trial to these standards, there was substantial evidence upon which to uphold the jury's determination.[3]

Accordingly, the judgment of the trial court is affirmed.

*Chester M. Kanai*, Deputy Public Defender, for defendant-appellant.

*Arthur E. Ross (Mililani Trask* on the brief), Deputy Prosecuting Attorneys, for plaintiff-appellee.

---

[3] One additional factor which the jury was free to consider in determining appellant's sanity was the arresting security guard's testimony that he had confronted appellant on numerous occasions and that at the time of the incident, he did not notice anything different or unusual about appellant's behavior.