**Electronically Filed
Supreme Court
SCWC-14-0001079
30-JUN-2017
08:04 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

STATE OF HAWAI'I, Respondent/Plaintiff-Appellee,

vs.

SAMUEL EAGER, Petitioner/Defendant-Appellant.

SCWC-14-0001079

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-14-0001079; CR. NO. 13-1-0145)

JUNE 30, 2017

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY RECKTENWALD, C.J.

This case requires us to consider whether a defendant's failure to take prescription medication can constitute self-induced intoxication under Hawai'i Revised Statutes (HRS) § 702-230, which precludes the defendant from relying on the defense of lack of penal responsibility due to a physical or mental disease, disorder, or defect. We hold that it does not, and that the

defense is therefore available in the circumstances presented here.

Defendant Samuel Eager was charged with assault in the second degree after attacking a stranger at a bus stop, and a bench trial was held in the Circuit Court of the First Circuit (circuit court).[1]  Eager presented the defense of lack of penal responsibility as a result of disease, disorder, or defect, arguing that he was experiencing a psychotic episode at the time of the attack.  The State did not dispute Eager's psychosis, but argued that he should nonetheless be held criminally responsible because his psychosis stemmed from his failure to take prescribed medication and from marijuana use.  The circuit court found Eager guilty, concluding that "any disease, disorder, or defect the Defendant may have been suffering from at the time of the assault was self-induced and the product of the Defendant's refusal to take his prescribed medication and his use of marijuana."  The court sentenced Eager to five years' incarceration.

On appeal to the Intermediate Court of Appeals (ICA), Eager argued that (1) he was deprived of a fair trial because one expert witness, Dr. Wagner, improperly bolstered the opinion of another expert witness, Dr. Jacobs, and (2) the circuit court abused its discretion in sentencing Eager to five years' imprisonment because there were strong mitigating factors, making

---

[1]     The Honorable Randal K.O. Lee presided.

probation a more appropriate sentence.  The ICA rejected Eager's arguments and affirmed the circuit court's judgment of conviction.  Eager now raises the same arguments on certiorari review here.

We agree with the ICA's reasoning regarding Eager's first point of error.  We need not consider Eager's arguments regarding his sentence, as we recognize plain error in the circuit court's holding that Eager's psychotic behavior was the result of self-induced intoxication.  HRS § 702-230(5) (1993) defines "self-induced intoxication" as "intoxication caused by substances which the defendant knowingly introduces into the defendant's body, the tendency of which to cause intoxication the defendant knows or ought to know."  Accordingly, the circuit court's holding that Eager's <u>failure</u> to take his medication caused his psychotic behavior is inconsistent with the plain language of the statute, which requires the <u>introduction</u> of substances into the body.  Thus, the circuit court's conviction of Eager was in error.

We therefore vacate the ICA's judgment on appeal and the circuit court's judgment of conviction, and remand for further proceedings consistent with this opinion.

## I.  Background

### A.  Circuit Court Proceedings

On February 1, 2013, the State charged Eager with one count of assault in the second degree in violation of HRS

3

§ 707-711(1)(b)[2] for recklessly causing substantial bodily injury to then-79-year-old Hua Zhao Liang (Liang), and subject to sentencing under HRS § 706-660.2[3].

Eager filed a "Motion for H.R.S. § 704-404[4] Examination" to determine his fitness to proceed to trial and

---

[2]     HRS § 707-711(1)(b) (Supp. 2011) provides: "A person commits the offense of assault in the second degree if . . . [t]he person recklessly causes serious bodily injury to another[.]"  Assault in the second degree is a class C felony.

[3]     HRS § 706-660.2 (1993) provides, in relevant part:

> Notwithstanding section 706-669, a person who, in the course of committing or attempting to commit a felony, causes the death or inflicts serious or substantial bodily injury upon a person who is:
>      (1)   Sixty years of age or older;
>      . . .
> and such disability is known or reasonably should be known to the defendant, shall, if not subjected to an extended term of imprisonment pursuant to section 706-662, be sentenced to a mandatory minimum term of imprisonment without possibility of parole as follows:
>      . . .
>      (4)   For a class C felony--one year, eight
>            months.

[4]     HRS § 704-404 (Supp. 2008) provides in relevant part:

> (1) Whenever the defendant has filed a notice of intention to rely on the defense of physical or mental disease, disorder, or defect excluding responsibility, or there is reason to doubt the defendant's fitness to proceed, or reason to believe that the physical or mental disease, disorder, or defect of the defendant will or has become an issue in the case, the court may immediately suspend all further proceedings in the prosecution.
>
> (2) Upon suspension of further proceedings in the prosecution, the court shall appoint three qualified examiners in felony cases . . . to examine and report upon the physical and mental condition of the defendant.  In felony cases the court shall appoint at least one psychiatrist and at least one licensed psychologist.  The third member may be a psychiatrist, licensed psychologist, or qualified physician[.]

4

whether he would be held penally responsible for his conduct. The circuit court appointed a three-member panel of examiners: Dr. Leonard Jacobs, Dr. Duke Wagner, and Dr. Olaf Gitter.

Each doctor submitted a report to the court. The doctors all determined that Eager was fit to proceed, but differed with regard to penal responsibility. Dr. Jacobs and Dr. Wagner concluded that Eager's cognitive and volitional capacities were not substantially impaired at the time of the alleged assault. Dr. Gitter concluded that Eager's capacities were substantially impaired due to an "acute manic episode."

The court issued a "Judicial Determination of Fitness to Proceed and Order," finding that Eager was fit to stand trial.

Eager waived his right to a jury, and his case proceeded to a bench trial. Liang testified that on January 29, 2013, he got off the bus and was walking to the food bank when "on the left side of me suddenly someone hit me on my head and then I fainted." He testified that he lost consciousness and did not see the person who hit him. An ambulance took Liang to Queen's Medical Center (Queen's), where he received eighteen stitches. A passerby testified that on the morning of January 29, 2013, she saw Eager stomping on the head of an elderly man laying motionless on the ground, leading her to call 911 in response. A "Stipulation as to Testimony" was filed in open court, which indicated that Liang's injuries included a major laceration of the skin on his forehead, a facial bone

5

fracture, and a serious concussion.

The State's witnesses also included two Honolulu Police Department officers who interacted with Eager following his arrest several hours after the attack, and the detective who investigated the incident. The arresting officer testified that Eager was "compliant" and attentive at the time of arrest.

Dr. Gitter, an expert in clinical psychology, testified for the defense that he reviewed Eager's medical records from Queen's, where he was treated on January 8-10 and 26-27, 2013, and Oʻahu Community Correctional Center (OCCC), where he was examined following the alleged assault.

Dr. Gitter testified that the Queen's and OCCC records showed that Eager exhibited signs of mental illness, including an acute manic episode, auditory and visual hallucinations, and bipolar disorder. Dr. Gitter also stated that on Eager's January 26-27 visit to Queen's, "drug testing showed that he tested positive for marijuana only."

When questioned about Eager's marijuana use, Dr. Gitter testified that "cannibus [sic] psychotic disorder" exists, but that he "seriously doubt[ed]" that marijuana triggered Eager's acute manic episode.

The defense then asked Dr. Gitter about Eager's mental state at the time of the incident, and Dr. Gitter answered that "he was suffering from a bipolar disorder mix type of depressive and manic features and that it was so severe that he was also

6

psychotic at the time." When asked if he thought Eager was penally responsible for the assault, Dr. Gitter opined that Eager's cognitive and volitional capacities were "substantially impaired by an exacerbation of his mental disorder."

On cross-examination, Dr. Gitter testified that although he could not say what exactly triggered Eager's manic episode at the time of the incident,

> my opinion is that he still was suffering just two days after having been discharged from Queen's Medical Center. He had not been given any medication that typically would have been given to deal with the psychosis. He was only given, I believe Ambien, which is a sleep medication. And, the way he described the assault to me was that he was clearly psychotic asking the gentleman whether he believed in Jesus and then assaulting him to drive out the demons. Plus, two days later when he was at OCCC again he was noted to be manic and psychotic.

The court asked Dr. Gitter if marijuana could indirectly trigger a psychotic episode by altering Eager's perception of reality, to which Dr. Gitter replied, "it could." When the court asked Dr. Gitter if Eager was psychotic from the time he was discharged from Queen's until he was admitted to OCCC, Dr. Gitter said yes.

The State presented two rebuttal witnesses, Dr. Jacobs and Dr. Wagner, who also examined Eager at OCCC prior to trial.

Dr. Jacobs, an expert in psychiatry, opined that Eager's judgment was impaired due to a combination of self-induced prescription drug withdrawal and marijuana use. Dr. Jacobs diagnosed Eager with "a personality disorder and somatic

symptom disorder with predominant pain persistent and severe."[5] Dr. Jacobs testified that Eager was prescribed the sleep aid Ambien, the anti-inflammatory medication Meloxicam, and the painkiller Percocet. Dr. Jacobs also testified that Eager reported that he had "not taken any of his drugs, except marijuana, for three days" prior to the incident. Dr. Jacobs opined that ceasing to take Ambien would cause "severe insomnia, agitation, and feeling very uncomfortable," and that stopping Percocet, an opiate, "can cause severe problems with withdrawal."

Dr. Jacobs testified that Eager "did not have any psychosis at the time I interviewed him" and, according to the Queen's reports and Eager himself, he was not intoxicated but rather "probably suffering from withdrawal symptoms" at the time of the assault.[6] Dr. Jacobs further testified that despite his personality disorder, Eager "knows right from wrong."

On cross-examination, Dr. Jacobs agreed that, at the time of the incident, Eager's psychotic episode rendered him incapable of appreciating the wrongfulness of his actions.

The State then called Dr. Wagner, an expert in

---

[5] Dr. Jacobs testified that, according to Eager's medical records, previous doctors "gave [Eager] a diagnosis of cannabis withdrawal, opiate withdrawal, sedative hypnotic anxiolytic withdrawal, cannabis use disorder severe, opiate use disorder severe, sedative hypnotic anxiolytic disorder moderate, substance medication induced psychotic disorder with delusions versus a substance withdrawal delirium."

[6] When asked if there was any indication that Eager was addicted to his prescription medications, Dr. Jacobs opined that he was "addicted to all of them."

8

psychology, who testified that his "diagnostic impressions at the time of the alleged offense" were "post-traumatic stress disorder and cannabis abuse versus dependence."  The State asked Dr. Wagner about the possible effects of marijuana use:

> [Deputy Prosecuting Attorney]:  [A]s a psychologist were you able to say whether or not the intake of a type of cannabis, for instance, marijuana, could that lead to psychosis?
>
> [Dr. Wagner]:  Well, I think the literature indicates that there is that possibility, yes.  That has happened, I believe, in instances with many different types of illicit drugs, we found that to be true.  And I think marijuana, although not maybe as frequently as, let's say, other drugs, like crystal methamphetamine, but  still, I think there's been an indication that that has happened.

Dr. Wagner described Eager's account of the incident as follows:

> [Eager] was walking along the sidewalk, and he evidently asked the male individual, from what he reported to me, whether or not he believed in Jesus, and the individual replied, No, and laughed and said something else.  Then he got angry, and he grabbed the individual, threw him down, started kicking him.

Dr. Wagner opined, "to me [there] is not enough evidence to indicate that he is suffering from severe psychotic symptoms and a psychotic disorder such that he doesn't know that it's inappropriate to hit someone or pull someone to the ground and -- and can't control his behavior."

The State asked Dr. Wagner several questions about Dr. Jacobs' report, two of which the circuit court disallowed because the State appeared to be "asking Dr. Wagner to testify as to the

9

credibility of another witness."[7]  The court permitted questions regarding whether Dr. Jacobs' report changed Dr. Wagner's opinion, and Dr. Wagner answered that Dr. Jacobs' report "provides additional information about the use of prescribed medication," but "doesn't change the final opinion as far as penal responsibility."

The court asked Dr. Wagner whether "the cannabis abuse or dependence [would] heighten [Eager's] sensitivity to post-traumatic stress disorder."  Dr. Wagner said that he thought the cannabis was an "additive factor," but he did not know the extent that "it pushed him over the edge here in this situation."

Eager elected not to testify.

In its closing argument, the State explained that it did not dispute that Eager was psychotic at the time of the incident, but rather argued that the psychosis was self-induced. The State noted that Dr. Wagner testified that marijuana could cause psychosis, and Dr. Jacobs "also built on this viewpoint." The State also noted that Dr. Jacobs had testified that "withdrawals of opiates can also cause psychosis."  Thus, because Eager's behavior was due to "the withdrawal of his pills and the usage of the marijuana," Eager was criminally responsible.

---

[7]  Specifically, the circuit court disallowed the following questions: "Now, based on your expertise and your knowledge in your sphere, how did you take away, you know, with Dr. Jacobs' opinion?"; and, "Now, would you agree with [Dr. Jacobs'] expert opinion?  Is it consistent, I guess, consistent in your examining this defendant in this case?"

The defense's closing argument focused on Dr. Gitter's testimony, noting that Dr. Gitter had considered marijuana-induced psychosis and "outright rejected it." Defense counsel further stated that "we dispute the fact that it could have been marijuana that induced the psychosis, [but] even if that were true that would fall into the realm of pathological intoxication and would still result in a defense."

The circuit court found Eager guilty of assault in the second degree.[8]

The circuit court filed its "Findings of Fact, Conclusions of Law, and Order," in which it made the following conclusions regarding Eager's mental state:

> 18.  Section 702-230 HRS further defines "Self-induced intoxication" as ". . . intoxication caused by substances which the defendant knowingly introduces into the defendant's body, the tendency of which to cause intoxication the defendant knows or ought to know . . ."
>
> . . . .
>
> 20.  As applied, the Hawaii Supreme Court has held that, ". . . mental disability excusing criminal responsibility must be the product of circumstances beyond the control of the defendant . . . [s]elf-induced intoxication is not such a disability." See State v. Freitas, 62 Haw. 17, 20, 608 P.2d 408, 410 (1980).
>
> . . . .
>
> 28.  The issue at hand is whether, at the time

---

[8]     The court found that there was insufficient evidence that Eager knew that Liang was at least 60 years old, and thus was not eligible for the mandatory minimum sentence under HRS § 706-660.2.

11

of the offense, the Defendant was suffering from a mental disease, disorder, or defect that was the product of circumstances beyond the control of the defendant.

. . . .

30. [T]he evidence in this case is clear that prior to the incident in question, the Defendant was not taking his prescribed medication and was smoking marijuana.

. . . .

32. The Court further finds and concludes that any disease, disorder or defect the Defendant may have been suffering at the time of the assault was self induced and the product of the Defendant's refusal to take his prescribed medication and his use of marijuana.

33. Although Doctor Gitter testified and opined that the marijuana may not have been the cause of the Defendant's psychotic behavior, the Court finds and concludes that the evidence presented at trial supports the opinions and conclusion of Doctor Jacobs and Doctor Wagner who concluded that the Defendant's capacity to appreciate the wrongfulness of his conduct or conform his conduct to the requirements of the law was not substantially impaired as a result of a mental or physical disease, disorder or defect.

. . . .

37. Given the Defendant's history of behavior leading up to and after the assault of Mr. Liang, the Court can only find and conclude that the Defendant's psychotic and delusional behavior resulted from his refusal to take his medication and knowingly smoke marijuana.

38. Therefore, the Court finds and concludes that on January 29, 2013, the Defendant's psychotic and delusional behavior was as a result of the Defendant's decision not to take his prescribed medication, the subsequent withdrawal from prescribed medication, and knowingly smoking marijuana.

39. The Court further finds and concludes that

12

> on January 29, 2013, the Defendant was not suffering
> from a mental or physical disease, disorder, or defect
> that substantially impaired his ability to appreciate
> the wrongfulness of his conduct or conform his conduct
> to the requirements of the law.

The circuit court thus sentenced Eager to five years'
incarceration and ordered him to pay restitution.

## B.    ICA Proceedings

On appeal to the ICA, Eager raised two points of error.
First, Eager asserted that he was deprived of a fair trial
because Dr. Wagner considered the opinion of Dr. Jacobs, which
improperly bolstered Dr. Jacobs' credibility.

Second, Eager argued that the circuit court abused its
discretion when it sentenced him to five years' imprisonment
because there were strong mitigating factors present to sentence
him to probation.  Eager argued that probation would have been
appropriate because he showed remorse for his actions and would
benefit from mental health treatment.

The ICA found both of Eager's arguments to be without
merit.  First, the ICA determined that "Dr. Wagner testified
about whether Dr. Jacobs' report changed Dr. Wagner's opinion; he
did not provide any impermissible testimony on the subject of Dr.
Jacobs' credibility."  Second, the ICA concluded that the circuit
court did not abuse its discretion in sentencing Eager to five
years' imprisonment instead of probation, noting that the court
"emphasized the nature and circumstances of Eager's offense, his
prior criminal history, and the danger he posed to the

13

community." The ICA thus affirmed the circuit court, and judgment on appeal was filed on August 2, 2016.

## II. Standards of Review

### A. Admissibility of Opinion Evidence

"In Hawaii, admission of opinion evidence is a matter within the discretion of the trial court, and only an abuse of that discretion can result in reversal." State v. Tucker, 10 Haw. App. 73, 89, 861 P.2d 37, 46 (1993) (citation omitted). "However, when there can only be one correct answer to the admissibility question, or when reviewing questions of relevance under Hawaiʻi Rules of Evidence (HRE) Rules 401 and 402, [the appellate] court applies the right/wrong standard of review." Kealoha v. County of Hawaiʻi, 74 Haw. 308, 319, 844 P.2d 670, 676 (1993).

### B. Conclusions of Law

This court reviews the trial court's conclusions of law [COLs] de novo. Bhakta v. Cnty. of Maui, 109 Hawaiʻi 198, 208, 124 P.3d 943, 953 (2005) (citation omitted).

## III. Discussion

In his application for writ of certiorari, Eager repeats his arguments asserted at the ICA and presents the following questions:

> (1) [Whether] Petitioner was deprived of a fair trial because Dr. Wagner "considered the expert opinion of Dr. Jacobs in his opinions," which, Petitioner argues, improperly bolstered Dr. Jacob's testimony, and

14

> (2) [Whether] [t]he trial court abused its discretion in sentencing Petitioner to five years' imprisonment because there were strong mitigating factors to withhold a prison sentence and instead sentence Petitioner to probation.

We conclude that the ICA correctly determined that Dr. Wagner's testimony did not improperly bolster Dr. Jacobs' opinion.

However, the circuit court plainly erred in improperly characterizing Eager's <u>failure</u> to take his medication as self-induced intoxication, thus negating his incapacity defense. Accordingly, we vacate the circuit court's judgment and remand this case for further proceedings consistent with this opinion.[9]

## A.   Dr. Wagner's Testimony

Eager asserts that he was deprived of a fair trial because Dr. Wagner bolstered Dr. Jacobs' expert opinion by commenting on it.  Eager appears to suggest[10] that Dr. Wagner's testimony was improper because HRS § 704-404(3) provides that, <u>during the examination process</u> to determine a defendant's fitness to stand trial, the experts are required to "render diagnoses and opinions upon the physical and mental condition of the defendant independently from the other examiners."  (Emphasis added.)

---

[9]     Since we are remanding for further proceedings consistent with this opinion, we do not address Eager's argument that the circuit court abused its discretion in sentencing him.

[10]     As noted by the ICA, "Eager's argument makes no attempt to connect the facts of the case to the law he presents, which means that we may 'disregard [the] particular contention [because he] makes no discernible argument in support of that position.'"  (Quoting <u>Kakinami v. Kakinami</u>, 127 Hawai'i 126, 144 n.16, 276 P.3d 695, 713 n.16 (2012).)

15

However, HRS § 704-404(4)(f) (Supp. 2008)[11] provided that "[a]fter all reports are submitted to the court, examiners may confer without restriction." Accordingly, Eager's citation to HRS § 704-404 is inapposite.

The Hawai'i Rules of Evidence (HRE) allow experts to testify within their area of expertise in order to assist the trier of fact. See HRE Rule 702 (1992). While experts may not testify as to the credibility of other witnesses, expert testimony nevertheless has the potential to indirectly bolster or refute the credibility of another witness. State v. Batangan, 71 Haw. 522, 558, 799 P.2d 48, 52 (1990). However, this fact by itself does not render such testimony inadmissible. Id. In those cases, "[t]he pertinent consideration is whether the expert testimony will assist the [trier of fact] without unduly prejudicing the defendant." Id.

Dr. Wagner testified that he and Dr. Jacobs had different focuses in writing their reports, which is consistent with the fact that Dr. Wagner is a psychologist and Dr. Jacobs is a psychiatrist. Additionally, Dr. Wagner never opined on Dr. Jacobs' truthfulness or his skills as a psychiatrist. Further, the court did not allow Dr. Wagner to testify regarding whether he agreed with Dr. Jacobs' report or thought it was accurate.

Dr. Wagner's testimony is therefore distinguishable

---

[11] HRS § 704-404(4)(f) (Supp. 2008) has since been recodified as § 704-404(5)(d) (Supp. 2016).

16

from prior cases in which we held that a witness improperly bolstered another witness's testimony.  See State v. Calara, 132 Hawaiʻi 391, 400-01, 322 P.3d 931, 940-41 (2014) (finding inadmissible a police detective's testimony that probable cause was established to arrest the defendant); State v. Ryan, 112 Hawaiʻi 136, 141, 144 P.3d 584, 589 (2006) (finding inadmissible police officers' testimony that they did have any reason not to believe the complaining witness); State v. Morris, 72 Haw. 527, 528-29, 825 P.2d 1051, 1052 (1992) (finding inadmissible an expert's testimony that clearly implied that he believed the complaining witness); Batangan, 71 Haw. at 562, 799 P.2d at 54 (same).  Accordingly, the circuit court did not err in allowing Dr. Wagner's testimony, as it did not improperly bolster the testimony of Dr. Jacobs.

## B.    Self-Induced Intoxication

Although Eager's argument that Dr. Wagner improperly bolstered the testimony of Dr. Jacobs is without merit, we exercise plain error review with regard to the circuit court's application of HRS § 702-230.  "[W]here plain error has been committed and substantial rights have been affected thereby, the error may be noticed even though it was not brought to the attention of the trial court."  State v. Miller, 122 Hawaiʻi 92, 117, 223 P.3d 157, 182 (2010) (brackets and emphasis omitted) (quoting State v. Kaiama, 81 Hawaiʻi 15, 25, 911 P.2d 735, 745 (1996)); see also Hawaiʻi Rules of Penal Procedure Rule 52(b)

17

(1977).

The circuit court appears to have impermissibly considered Eager's <u>failure</u> to take his medication as a basis for his self-induced intoxication:

> 37.  Given the Defendant's history of behavior leading up to and after the assault of Mr. Liang, the Court can only find and conclude that the Defendant's psychotic and delusional behavior resulted from his refusal to take his medication and knowingly smoke marijuana.

> 38.  Therefore, the Court finds and concludes that on January 29, 2013, <u>the Defendant's psychotic and delusional behavior was as a result of the Defendant's decision not to take his prescribed medication</u>, the subsequent withdrawal from prescribed medication, and knowingly smoking marijuana.

(Emphasis added.)

HRS § 704-400 (1993) provides:

> A person is not responsible, under this Code, for conduct if at the time of the conduct as a result of physical or mental disease, disorder, or defect the person lacks substantial capacity either to appreciate the wrongfulness of the person's conduct or to conform the person's conduct to the requirements of law.

HRS § 702-230 (1993) provides that self-induced intoxication is not a defense under HRS § 704-400:

> (1) <u>Self-induced intoxication is prohibited as a defense to any offense</u>, except as specifically provided in this section.

> (2) Evidence of the nonself-induced or pathological intoxication of the defendant shall be admissible to prove or negative the conduct alleged or the state of mind sufficient to establish an element of the offense.  Evidence of self-induced intoxication of the defendant is admissible to prove or negative conduct or to prove state of mind sufficient to establish an element of an offense.  Evidence of self-induced

18

intoxication of the defendant is not admissible to negative the state of mind sufficient to establish an element of the offense.

(3) Intoxication does not, in itself, constitute a physical or mental disease, disorder, or defect within the meaning of section 704-400.

(4) Intoxication which (a) is not self-induced or (b) is pathological is a defense if by reason of such intoxication the defendant at the time of the defendant's conduct lacks substantial capacity either to appreciate its wrongfulness or to conform the defendant's conduct to the requirements of law.

(5) In this section:

(a) "Intoxication" means a disturbance of mental or physical capacities resulting from the introduction of substances into the body;

(b) "Self-induced intoxication" means intoxication caused by substances which the defendant knowingly introduces into the defendant's body, the tendency of which to cause intoxication the defendant knows or ought to know, unless the defendant introduces them pursuant to medical advice or under such circumstances as would afford a defense to a charge of a penal offense;

(c) "Pathological intoxication" means intoxication grossly excessive in degree, given the amount of the intoxicant, to which the defendant does not know the defendant is susceptible and which results from a physical abnormality of the defendant.

(Emphases added.)

This court has stated that the purpose of HRS § 702-230 "is to prevent defendants who willingly become intoxicated and then commit crimes from using self-induced intoxication as a defense." State v. Souza, 72 Haw. 246, 248, 813 P.2d 1384, 1386 (1991). Accordingly, self-induced intoxication that is not pathological should not be considered a substantial factor in

19

determining legal competency because it is not a mental disease, disorder, or defect.  See HRS § 702-230 (3).

In convicting Eager, the circuit court determined that "any disease, disorder or defect the Defendant may have been suffering at the time of the assault was self induced and the product of the Defendant's refusal to take his prescribed medication and his use of marijuana."  In other words, the court appears to have determined that Eager did not have a defense under HRS § 704-400 because his behavior was self-induced under HRS § 702-230.

The circuit court's analysis does not comport with the plain language of HRS § 702-230.  Self-induced intoxication requires a defendant to have "knowingly introduce[d]" a substance into his or her body.  See HRS § 702-230(5)(b).  However, the circuit court found Eager criminally culpable for failing to take his prescribed medication.  This conclusion was in error, as failing to take medication cannot be characterized as "introducing" a substance into his body.

The State concedes that Eager's "failure to take his prescribed medication does not equate to 'the introduction of substances into the body'" per HRS § 702-230(5).  Nonetheless, it argues that this failure "was a volitional act on his part and should not absolve him of penal responsibility."  In other words, the State argues that even though Eager was psychotic at the time of the incident, he should be held responsible because his

20

psychosis stemmed from the "volitional act" of not taking medication. This argument is without merit. The State's contention that such a "volitional act" can give rise to penal responsibility has no basis in HRS § 702-230. See HRS § 702-230(5)(b) ("'Self-induced intoxication' means intoxication caused by substances which the defendant knowingly introduces into the defendant's body[.]") (emphasis added). Moreover, the State provides no other authority in support of its argument that a defendant can be held criminally responsible for acts committed while psychotic if the psychosis stems from a "volitional act" resulting in the non-introduction of substances into the human body, and we are aware of none.

The reasoning of Commonwealth v. Shin, 16 N.E.3d 1122 (Mass. App. Ct. 2014), provides additional support for the outcome we reach here. In Shin, the defendant, who had been diagnosed with schizophrenia, was charged with indecent assault and battery. See id. at 1123-24. At a bench trial, his primary defense was "lack of criminal responsibility" based on his mental illness and his inability to conform his conduct to the law. See id. at 1124-25. The trial court found the defendant guilty, determining that he "knew that if he didn't take his medication he was likely to commit further crimes and went ahead anyway and stopped taking his medication." Id. at 1126 (internal quotation marks omitted).

The Appeals Court of Massachusetts held that the trial

21

court erred by "inquiring [into] whether the defendant's lack of criminal responsibility was caused by his failure to take prescribed medications."  Id. at 1128.  The court distinguished prior cases which considered whether a defendant was criminally responsible for conduct resulting from the voluntary consumption of drugs or alcohol:

> Obviously, here, the question is not whether the defendant knowingly and voluntarily consumed alcohol or drugs that exacerbated his inability to understand the wrongfulness of his behavior or undermined his capacity to conform his behavior to the requirements of the law, but whether his failure to take prescribed medication had those effects.  It is not at all clear that the situations are analogous; mentally ill people fail to take prescribed medication for a myriad of reasons, including, for example, side effects that may be otherwise dangerous to their health. . . . In addition, some people are unable to obtain the appropriate medication because of lack of money or access to medical care, or problems with necessary paperwork such as may have occurred in this case.  A decision not to take a prescribed medicine, though it may be ill-advised, is different in kind from a decision to ingest alcohol or drugs that are not prescribed.  In addition, some medications work better than others, or take time to become effective, and the difficulty of discerning when, exactly, someone stopped taking medication and what his mental state was at that time would be challenging at best.

Id. at 1128-29.

Unlike cases in which the ingestion of drugs or alcohol caused the criminal behavior, the court observed, "[the defendant's] mental illness is not caused by his failure to take medication, even though the medication might alleviate it somewhat or even entirely."  Id. at 1128 (emphasis in original).  Thus, the court determined that "[t]he appropriate analysis was

22

simply whether, at the time of the incident, the defendant was criminally responsible."[12]  Id.

As the Shin court similarly concluded, the failure to take medication may not be considered in determining the defense of lack of penal responsibility due to a mental disease, disorder, or defect.  In this case, the circuit court based its finding that Eager was criminally responsible on Eager's having smoked marijuana as well as his "decision not to take his prescribed medication."  The circuit court did not distinguish the effects of marijuana use from ceasing to take prescription medication, and thus we do not know whether the circuit court would have concluded that Eager's marijuana use, standing alone, could support a finding of criminal responsibility due to self-induced intoxication.  Moreover, when a defendant both a) knowingly ingests an intoxicating substance, the tendency of which to cause intoxication the defendant knows or ought to know, and b) experiences mental disease, disorder, or defect, the trier of fact must determine whether the mental disturbance would excuse the defendant's criminal conduct absent the influence of the intoxicant.  See Freitas, 62 Haw. at 21, 608 P.2d at 411 ("[I]t was obligatory upon the trial court to disregard whatever incapacitating effects were attributable to the defendant's

---

[12]    Since the trial court did not determine whether the defendant lacked the requisite capacity at the time of the crime due to a mental disease or defect, the court concluded that the defendant was entitled to a new trial. See Shin, 16 N.E.3d at 1128.

23

voluntary ingestion of alcohol in determining whether, at the time of the conduct charged, the accused was suffering from a disability that would excuse his criminal conduct.") (citing United States v. Burnim, 576 F.2d 236 (9th Cir. 1978)).

Because the circuit court failed to make the necessary findings, we must remand for further proceedings consistent with this opinion.

### IV.  Conclusion

Dr. Wagner's testimony did not improperly bolster Dr. Jacobs' opinion.  However, the circuit court erred in its determination that Eager was criminally responsible based on his failure take prescription medication.  Thus, we vacate the ICA's August 2, 2016 judgment on appeal and the circuit court's June 30, 2014 judgment of conviction, and remand to the circuit court for further proceedings consistent with this opinion.

Shawn A. Luiz
for petitioner

Loren J. Thomas
for respondent

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Richard W. Pollack

/s/ Michael D. Wilson

