## 38546. BAILEY v. THE STATE.

JORDAN, Chief Justice.

Verlin W. Bailey was convicted in DeKalb County of the murder of Himelda Barios Bailey, his wife, and of the murder of Tracy Allen Huyett, a boyfriend of Cindy Rochester, Bailey's tenant. The state

---

sought the death penalty. The jury returned two life sentences.

For several months, Cindy had rented a room and bath in the Bailey home. She and her friend, Tracy, returned to the Bailey home during the early morning hours following a night and early morning of dancing and drinking at the Limelight Disco. Bailey was awake and awaiting their return. He took her key, refunded the balance of her monthly rental payment, and demanded that she vacate her rooms that morning. While Cindy went upstairs to her room to change clothes, Tracy remained behind, or went back, downstairs to reason with Bailey.

When Cindy heard a loud noise downstairs, she ran to the top of the stairs, from where she saw Bailey repeatedly firing bullets into Tracy's body as it lay face down on the hall floor. She left the Bailey home through a window, and summoned the police.

The investigating officers discovered the bodies of the two victims lying in the hallway. Mrs. Bailey had been shot once through the chest. Tracy had been shot once in the body from the front. Fourteen other rear-entry gunshot wounds later were identified in Tracy's back, spine, neck and head. Ninety percent of his brains had been blown out of the cranial cavity by repeated shots to the back of his head, which had severed a large portion of his face.

Bailey testified that he shot Tracy with a .30 caliber M-1 carbine until the magazine was empty after Tracy called him a SOB, told him that he was not going to get away with evicting Cindy, and started moving toward him in a drunken, belligerent manner, with teeth gnashing, eyes glaring, and saying that he was going to get him. There was no evidence indicating that Tracy was armed. Tracy's blood alcohol level was .09 percent. See Code Ann. § 68A-902.2(a).

Bailey's decision to evict Cindy had resulted from his dissatisfaction with her lifestyle. He had taped her telephone conversations, and had been displeased, among other things, with her having men visitors in her room contrary to the conditions of her lease. He had considered evicting her months earlier but had relented. Bailey and his wife had met at a church-related gathering and they spent a large amount of time at church and participating in church-related functions.

Although Bailey testified that he loved his wife, the jury heard evidence indicating that they had had marital problems. Bailey, himself, gave little account of the circumstances surrounding the shooting of his wife.

1. Trial defense counsel stipulated that Bailey was sane at the time of the shootings under the "right-wrong" test of Code Ann. § 26-702, but contended by plea that Bailey shot his victims while suffering under a delusional compulsion. Code Ann. § 26-703. The

refusal of the trial court to sustain the plea or to charge the law of delusional compulsion is enumerated as error by Bailey.

Bailey was fifty years of age at the time of the shootings. He had received a medical discharge from the Army in 1958 as a result of his mental condition. Before discharge, he had been promoted to the rank of master sergeant, and had served in combat in Korea. He was under treatment with tranquilizers from 1958 to the date of his trial.

Bailey had been unable to keep a job of any importance since his military discharge, and was advised by his physicians always to avoid high stress situations. He had been married five times. His last wife, one of his two victims, and he had met at a church social. He had occupied his time over the years since his military discharge by attending religious services. Income usually was provided by renting rooms in his large, Druid Hills home to boarders such as Cindy Rochester who were attending or working at or near Emory University. He had no prior criminal record other than a DUI conviction some thirteen years ago.

Bailey testified that he shot Tracy because he felt he was being threatened by Tracy; that he shot Tracy "for survival." Two psychiatrists testified that Bailey was a diagnosed chronic paranoid schizophrenic; that Bailey had perceived he was being confronted with a life-threatening situation although reality was otherwise; that Bailey had overreacted based on his perception; and that because of his mental condition Bailey had reacted more strongly and defensively, and his reactions had been more exaggerated, than those of a normal person.

We previously have held that in order for the defense of delusional compulsion to be available in a trial for murder " 'there must be evidence that the defendant was laboring under a delusion, that the act itself was connected with the delusion and furthermore that the delusion would, if true, justify the act.' " *Taylor v. State,* 243 Ga. 222, 227 (253 SE2d 191) (1979); *Graham v. State,* 236 Ga. 378, 379 (223 SE2d 803) (1976). To what we held in *Taylor* and *Graham* must be appended the necessary implication of Code Ann. § 26-703 that a chronic paranoid schizophrenic may no more voluntarily and intentionally induce his delusion than a chronic alcoholic voluntarily may induce his drunkenness then expect the homicide to be excused rather than criminal. Code Ann. § 26-704.

Contrary to his physicians' advice to avoid highly stressful confrontations, Bailey sat up into the early morning hours awaiting the return of his young female tenant and her boyfriend, dozing off in a downstairs chair briefly when he finally was overcome with fatigue, then arising when they sought to enter through the locked and chained front door. Nearby and fully-loaded with 16 rounds of

ammunition was his .30 caliber M-1 carbine. Bailey took her key, tendered back to her the balance of her current rental payment, and demanded that she vacate her rooms as soon as possible that very morning.

By stipulation of trial defense counsel, and as borne out by the evidence, Bailey was aware of the difference between right and wrong. He was aware that Cindy and her male companion had been drinking, of his own fatigue and of the probable fatigue of Cindy and her friend. Instead of awaiting daylight, when all were rested and calm and the male victim had gone home, then calmly returning Cindy's money and asking her to move out, he chose to evict her instanter, his loaded firearm handy in the den only four steps away. He had allowed her to remain as his tenant for several months although aware of her many infractions of his rule against men spending the night. There was no cause for her immediate eviction on such short notice.

If, in fact, Bailey suffered from a delusion arising from his confrontation with Tracy which properly would invoke Code Ann. § 26-703, then it must be said that he brought that delusion about with as much premeditation as a chronic alcoholic who, in the same circumstances, might have prepared himself for the impending confrontation by imbibing alcohol to excess.

The first enumeration of error is without merit.

2. We decline to disapprove the charge approved in footnote 2 of *Hosch v. State,* 246 Ga. 417, 420 (271 SE2d 817) (1980). The second enumeration of error is without merit.

3. Bailey contends that his consent to the dispersal of the jury was coerced by the trial court's having asked the question, "You want this jury sequestered?", in the presence of the jury.

The transcript does not indicate to whom that question was addressed, but does establish that defense counsel was the first to respond to the question, "Do you want this jury sequestered during the remaining period of this trial?", which was asked by the court after the jury had retired to the jury room and the jury room door had been closed.

Contrary to the state's assertions, it is reasonable to assume that the first question, heard by the jury, in fact was directed to the defense since the jury is sequestered in capital cases unless the defendant consents to their dispersal. Code Ann. § 59-718.1; *Jones v. State,* 243 Ga. 820, 823 (3) (256 SE2d 907) (1979). On the other hand, there is no showing that the jury understood the first question to have been addressed to the defense. The court offered to inform the jury that both sides had requested sequestration if Bailey chose not to consent to dispersal but Bailey refused the offer and consented to

dispersal. No showing of harm resulting to Bailey from these events has been made. *Jones v. State,* supra; *Mason v. State,* 239 Ga. 538, 540 (238 SE2d 79) (1977). The third enumeration of error is meritless.

4. No objection was stated to the investigating officer's testimony that Bailey advised him he did not wish to talk. Hence, no issue regarding the officer's comment on Bailey's invocation of his right to remain silent is presented for review.

5. Testimony regarding recent marital problems between Bailey and his wife was relevant to show Bailey's state of mind and his motive. *Evans v. State,* 227 Ga. 571, 576 (4) (181 SE2d 845) (1971).

6. Assuming, without deciding, the right of Bailey to have been present during the hearing of certain motions in chambers, we find no error because of Bailey's absence during the hearing since the trial court directed trial defense counsel to ask Bailey whether or not he would waive his right to be present during the hearing of the motions and, after conferring with Bailey, trial defense counsel reported back to the court that "We have the defendant's express permission to make the request and for you to hear the motions in chambers." The transcript adequately supports the state's contention that "the request" to which Bailey expressly gave his permission was that of trial defense counsel for the motions for a directed verdict of acquittal and for reduction of the charges either to voluntary or involuntary manslaughter to be heard with the public and Bailey not being present. *State v. Phillips,* 247 Ga. 246 (1) (275 SE2d 323) (1981). The final enumeration of error thus lacks merit.

*Judgment affirmed. All the Justices concur.*

DECIDED MAY 25, 1982 —
REHEARING DENIED JUNE 22, 1982.

*Kadish, Davis & Brofman, E. Marcus Davis,* for appellant.
*Robert E. Wilson, District Attorney, Ann Mitchell, Assistant District Attorney, Michael J. Bowers, Attorney General, George M. Weaver, Staff Assistant Attorney General,* for appellee.