310 Ga. 57
FINAL COPY

S20A0714.  THE STATE v. STEPHENS.

McMILLIAN, Justice.

The State appeals the trial court's order partially denying its "Motion to Include Relevant and Probative Evidence,"[1] which sought a pretrial ruling on the admissibility of two photographs for use at Justin Devon Stephens's second trial for the murder of Christopher Starks.[2] One of those photographs purportedly depicts Stephens with a gun in his hand ("Exhibit 1"). The other photograph depicts Stephens's girlfriend as she points a handgun at the camera and Stephens in the background holding what the State describes as a silver gun magazine ("Exhibit 2"). The trial court ruled that Exhibit 2[3] was inadmissible during Stephens's first trial, and again found it

---

[1] See OCGA § 5-7-1 (a) (5) (granting the State the right to appeal from a pretrial order "excluding any other evidence to be used by the state at trial" under certain circumstances).

[2] Stephens's first trial on charges arising from Starks's murder ended in a mistrial after the jury became "hopelessly deadlocked."

[3] The photograph in Exhibit 2 was offered as State's Exhibit 18 at the

to be inadmissible in denying the State's motion to introduce Exhibit 2 at the second trial.[4] Because we conclude that the trial court did not abuse its discretion in determining that Exhibit 2 was irrelevant, we affirm.

Starks was killed on August 27, 2015, at the Student Union located on the campus of Savannah State University. Stephens was first tried on the charges surrounding Starks's death from July 16 to July 19, 2019. As it relates to the State's motion, the evidence from the first trial[5] shows that the shooting occurred after two groups of men, one including Starks and the other including Stephens, "faced off" against one another. Several witnesses testified that when a third party punched Stephens, Stephens hit Starks, and the witnesses heard a gunshot. In statements given to law enforcement near the time of the murder, several witnesses

first trial.

[4] The trial court reserved its ruling on the admissibility of Exhibit 1.

[5] Although the evidence at the second trial obviously could differ from that presented in the first trial, we cite this evidence to provide context for the State's motion and because the trial court relied, in part, on its ruling from the first trial to exclude the Exhibit 2 photograph.

identified Stephens as the shooter or gave a description of the shooter that matched Stephens's height.

The firearm used to shoot Starks was never recovered, but the evidence at the first trial showed that during the law enforcement investigation into the shooting, one witness described the weapon as a "black pistol" and another witness described it as "big and black" and as a .40- or .45-caliber gun. Stephens's girlfriend testified that the only gun Stephens owned was a .22-caliber pistol he had purchased for himself. When the State attempted to introduce the Exhibit 2 photograph during the girlfriend's testimony, Stephens's counsel objected on the ground that it was irrelevant and impermissible character evidence. The trial court sustained the objection, stating that the photograph was irrelevant because there was nothing linking the gun in the photograph to Starks's murder and the photograph simply depicted Stephens with a gun magazine, not a weapon. After asking Stephens's girlfriend a few additional questions to elicit evidence that Stephens's girlfriend and he were not speaking at the time of the shooting, the prosecutor tried a

3

second time to introduce the photograph into evidence, and the trial court again ruled that it was inadmissible.

Less than a month after the first trial ended in a mistrial, a Chatham County grand jury indicted Stephens on the same offenses in a superseding indictment.[6] The State elected to proceed to trial on the superseding indictment and filed a motion seeking to introduce Exhibits 1 and 2 into evidence at that trial. In its motion, the State represented that during an interview with the GBI, Stephens had identified himself as the man holding the gun in Exhibit 1, and he identified the gun as belonging to his late brother. The State also represented that on September 3, 2015, a GBI special agent performed a search of Stephens's girlfriend's Twitter account and found the Exhibit 2 photograph posted to the account and that in a police interview, Stephens's girlfriend identified the man holding the gun magazine in Exhibit 2 as Stephens and identified herself as the woman pointing the gun. The State contended that the two

---

[6] The wording in some of the counts was slightly altered in the new indictment.

photographs were admissible under OCGA §§ 24-4-401 and 24-4-403 because the gun in the photographs matched the witnesses' descriptions of the gun used to shoot Starks. The State also asserted that the guns depicted in the two photographs appear to be "strikingly similar" and the fact that Stephens had a large tattoo on his arm in one picture and not in the other stood "for the proposition that Stephens was in possession of or had access to the firearm over some period of time which was more than a fleeting few days." According to the State, these factors demonstrated that the photographs were relevant and that their probative impact was not outweighed by prejudice.

The trial court denied the motion without a hearing, finding that Exhibit 2 was not relevant and rejecting the State's contention that Exhibit 1, showing Stephens with a gun in his hand, made Exhibit 2 any more probative. The trial court concluded that Exhibit 2 was irrelevant and inadmissible and reserved ruling on Exhibit 1 "until trial to determine its potential relevance in context."

1. The State argues on appeal that the trial court abused its

5

discretion in excluding Exhibit 2 as it matched the witnesses' descriptions of the murder weapon and was relevant to show that Stephens had access to a gun other than the .22-caliber gun his girlfriend described.

Under OCGA § 24-4-401 ("Rule 401"), "relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Although OCGA § 24-4-402 provides that, generally, "[a]ll relevant evidence shall be admissible," it also provides that "[e]vidence which is not relevant shall not be admissible." And even "[r]elevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." OCGA § 24-4-403. It is well-settled that "[q]uestions of relevance are within the sound discretion of the trial court, and absent a clear abuse of discretion, a court's decision to exclude evidence on the grounds of a lack of relevance

6

will not be disturbed on appeal." *Derrico v. State*, 306 Ga. 634, 636 (3) (831 SE2d 794) (2019). A trial court "[does] not abuse its discretion by excluding irrelevant evidence." *Jones v. State*, 305 Ga. 750, 753 (2) (c) (827 SE2d 879) (2019).

The murder weapon in this case was never recovered. Although one witness originally identified the gun used in the murder as a .40- or .45-caliber weapon, the State has not pointed to any evidence identifying the caliber of the firearm pictured in Exhibit 2. While witnesses also described the murder weapon as "a black pistol" and "big and black," and the gun pictured in Exhibit 2 also appears to be a large black pistol, significantly, as the trial court noted, Stephens is not even holding the gun in Exhibit 2. Rather, Stephens's girlfriend is holding the gun.

Moreover, the State has not shown when this photograph was taken. Although the prosecutor asserted at the first trial that it was taken before the murder, the State's pretrial motion did not point to any evidence to show when the photograph was taken,  nor did the State present evidence to establish the date of the social media post

7

from which law enforcement obtained Exhibit 2. Therefore, the photograph merely demonstrates that Stephens, at some unidentified point in time, sat next to his girlfriend while she held what appears to be a large black gun. The State has not pointed to any evidence showing that Stephens's girlfriend had any involvement in Starks's murder, or that the silver object in Stephens's hand is even a gun magazine that would fit the gun his girlfriend was holding.

To find the Exhibit 2 photograph relevant to show that Stephens had access to the murder weapon used in this case, the jury would need to make not just one inference, but a series of them: (1) that the gun in the photograph was the murder weapon; (2) that because Stephens's girlfriend held the gun in the photograph, she had continued access to it; (3) that Stephens also had access to the gun to use it in a crime; and (4) most speculatively, that he had access to it at the time of the murder. Although we have recognized that the relevance standard under Rule 401 is a liberal one, see *State v. Jones*, 297 Ga. 156, 159 (2) n.2 (773 SE2d 170) (2015), it is not

8

meaningless or without boundaries, and the determination of relevance remains within the trial court's discretion. We conclude that under these circumstances, without more information about the Exhibit 2 photograph, the trial court did not abuse its discretion in determining that the photograph would require the jury to stack too many increasingly strained inferences to find it relevant to the issue for which it was offered.[7] See *Jones*, 305 Ga. at 753 (2) (c) (trial court did not abuse its discretion in excluding as irrelevant a photograph showing an individual named "Peanut" and a third party together; even though the photograph established the two men knew each other, it "did not help determine whether Peanut or [the defendant] committed the murders" with that third party). See also *United States v. Reagan*, 725 F3d 471, 489 (5) (F) (2) (5th Cir. 2013) (trial court did not abuse its discretion in determining that connection between the evidence and the purpose for which it was offered was

---

[7] We note that the trial court told the prosecutor at the first trial that it might be more inclined to accept his arguments regarding relevance if Stephens were holding the gun in the Exhibit 2 photograph.

9

too tenuous to establish relevance);[8] *United States v. Gabriel-Martinez*, 321 Fed. Appx. 798, 801 (I) (A) (11th Cir. 2008) (district court did not plainly err in finding chain of inferences jury would be required to make was too attenuated to cause the evidence to be relevant); *United States v. Hurn*, 368 F3d 1359, 1366 (III) (B) (11th Cir. 2004) ("[T]here comes a point—and a [trial] court is perhaps in the best position to judge this—when the chain of inferences linking evidence and the legally relevant point to be proven is simply too long, dubious, or attenuated to require that the evidence be introduced.")[9]

2. The State also argues on appeal that the exclusion of the

---

[8] "Georgia's Rule 403 mirrors Federal Rule of Evidence 403, and we have accordingly interpreted our State's new rule in light of the federal appellate decisions interpreting the federal rule." *State v. Orr*, 305 Ga. 729, 737 (3) (827 SE2d 892) (2019).

[9] An issue also arises as to whether any claimed probative value of this evidence would be outweighed by the danger of unfair prejudice. See *United States v. Sellers*, 906 F2d 597, 602 (II) (A) (1) (ii) (11th Cir. 1990) (where claimed relevance "appears to rest on an exceedingly tenuous chain of speculation," any conceivable relevance would be outweighed by the potential for unfair prejudice). However, because the State has failed to show that Exhibit 2 is relevant, we need not consider the application of the balancing test under OCGA § 24-4-403.

evidence in the first trial negatively impacted the State's case;[10] the Exhibit 2 photograph was proper evidence to impeach Stephens's girlfriend's testimony; and the photograph was relevant to counter defense arguments regarding the credibility of the State's witnesses and that another individual was the shooter.

To the extent that these arguments seek consideration of the trial court's ruling excluding the photograph during the first trial and the trial court's comments at the first trial, such arguments are not a proper subject of this pretrial appeal by the State. Appeals by the State in criminal cases are limited to the issues listed and the circumstances identified under OCGA § 5-7-1, see *State v. Cash*, 298 Ga. 90, 93 (1) (b) (779 SE2d 603) (2015), and the trial court's rulings and statements in the first trial are not part of a pretrial motion excluding evidence under OCGA § 5-7-1 (a) (5). Moreover, to the extent the arguments require this Court to anticipate or predict how

---

[10] Specifically, the State asserts that at the first trial, the trial court made disparaging remarks about the prosecutor in front of the jury when it excluded the photograph, so the State altered its trial strategy and did not call several witnesses for fear that the trial court would make more disparaging comments.

11

witnesses might testify at the second trial, how the defense might respond to such testimony, and what comments the trial court may make, the arguments are premature. Finally, because our review is limited to the trial court's ruling on the State's motion, and the State did not raise any of these arguments below — instead arguing only that the photographs were relevant because the guns depicted in them matched witness descriptions of the murder weapon — we will not consider them for the first time on appeal. See *Turner v. State*, 299 Ga. 720, 722 (4) (791 SE2d 791) (2016) (where contentions differ from those raised in the trial court, they will not be considered for the first time on appeal); *Mangrum v. State*, 285 Ga. 676, 677 (2) (681 SE2d 130) (2009) (appellant waived for appeal claims not raised in his motion in limine); *Kitchens v. State*, 228 Ga. 624, 625 (1) (187 SE2d 268) (1972) ("The Supreme Court is a court for the . . . correction of errors of law committed in the trial courts . . . and it cannot decide questions raised for the first time after the case has

12

been appealed to it.").[11]

*Judgment affirmed. All the Justices concur, except Melton, C. J., and Boggs and Bethel, JJ., who dissent in part, Peterson, J., disqualified, and Warren, J., not participating.*

---

[11] This matter comes to this Court on a pretrial evidentiary motion, and nothing in this opinion should be interpreted as preventing the State from producing further evidence or argument to support the introduction of the Exhibit 2 photograph at the second trial.

MELTON, Chief Justice, dissenting in part.

Because I believe that State's Exhibit 2 was relevant under the liberal standard for the admission of evidence under Georgia's Evidence Code, I must respectfully dissent in part.

OCGA § 24-4-401 defines relevant evidence extremely broadly as "evidence having *any* tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." (Emphasis supplied.) OCGA § 24-4-402, in turn, highlights the equally broad admissibility of relevant evidence: "All relevant evidence shall be admissible, except as limited by constitutional requirements or as otherwise provided by law or by other rules, as prescribed pursuant to constitutional or statutory authority, applicable in the court in which the matter is pending. . . ."

The fact of consequence at issue here, in its simplest form, is whether Stephens possibly had access to the murder weapon. Eyewitnesses to the shooting which forms the center of this

14

prosecution identified Stephens as the shooter. Other eyewitnesses described the murder weapon in the following ways: a "black pistol"; "big and black"; and a .40- or .45-caliber handgun. The State presented two photographs: Exhibit 1, which shows Stephens holding a black pistol, and Exhibit 2, which shows Stephens's girlfriend holding a similar black pistol while Stephens sits behind her with a silver gun magazine. The decisive determination here, then, is whether Exhibit 2 has *any* tendency to make the existence of Stephens's access to the described murder weapon more or less probable than it would be without the evidence. The answer is that it clearly does. Exhibit 2, especially when considered in context with Exhibit 1, has some tendency to indicate that Stephens could have had access to the gun described to be the murder weapon. Stephens was identified as the shooter, the shooter's weapon was identified as a "big and black" pistol, and the photograph depicts Stephens with his girlfriend holding such a pistol while Stephens has a gun magazine in his hand. I believe this evidence, therefore, is clearly relevant, and the majority opinion incorrectly finds that Exhibit 2

has *no tendency at all* to prove an essential fact of this case.

But not all relevant evidence is admissible. OCGA § 24-4-403 grants the trial court discretion to exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." The exclusion of evidence under OCGA § 24-4-403 is "an extraordinary remedy" that "should be used only sparingly" to exclude "matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." (Citation and punctuation omitted). *Kirby v. State*, 304 Ga. 472, 480 (4) (819 SE2d 468) (2018). "The application of [OCGA § 24-4-403] is a matter committed principally to the discretion of the trial courts," and reviewed at the appellate level only for abuse of that discretion. *Plez v. State*, 300 Ga. 505, 507-508 (3) (796 SE2d 704) (2017).

In considering evidence such as the exhibits at issue in this case, it must be remembered that

> [r]elevance and probative value are related, but distinct, concepts. Relevance is a binary concept — evidence is relevant or it is not — but probative value is relative. Evidence is relevant if it has "any tendency" to prove or disprove a fact, whereas the probative value of evidence derives in large part from the extent to which the evidence tends to make the existence of a fact more or less probable. Generally speaking, the greater the tendency to make the existence of a fact more or less probable, the greater the probative value. And the extent to which evidence tends to make the existence of a fact more or less probable depends significantly on the quality of the evidence and the strength of its logical connection to the fact for which it is offered. See Milich, Georgia Rules of Evidence § 6.1 (2015) ("Probative value refers to the strength of the connection between the evidence and what it is offered to prove.").

(Emphasis omitted.) *Olds v. State*, 299 Ga. 65, 75 (2) (786 SE2d 633) (2016). In *Olds*, we also recognized that this distinction between relevance and probative value is discussed in a number of additional treatises, including Carlson & Imwinkelried et al., Evidence: Teaching Materials for an Age of Science and Statutes, p. 274 (7th ed. 2012) (in determining probative value, a court may consider "patent flaws such as facial vagueness or uncertainty in the proposed testimony," "the number of intermediate propositions between the item of evidence and the ultimate consequential fact

that the item is offered to prove," and "the logical strength of the inference from the item to the consequential fact that it is offered to prove"); Mueller & Kirkpatrick, Evidence § 4.21 (1995) ("The strength of the evidence in establishing the point it is offered to prove is properly considered by courts in undertaking [Rule] 403 balancing."); Graham, 22B Fed. Practice & Proc. Evid. § 5250 (2016) ("Another factor that bears on the probative worth of other crimes evidence is the strength or weakness of the proof of that crime."). *Olds*, supra, 299 Ga. at 75-76 (2) n. 14.

I believe that it is under the OCGA § 24-4-403 balancing test that the concerns expressed by the majority opinion would be brought into play. In other words, the trial court might determine that, though Exhibit 2 has some tendency to show Stephens's possible access to the murder weapon, the probative value of the evidence was so diminished by the inferences listed in the majority opinion that the exhibit failed the OCGA § 24-4-403 balancing test and was inadmissible relevant evidence. And that determination would be within the trial court's discretion. Id.

In any event, I believe that the trial court erred by finding that Exhibit 2 had no relevance in this case and that the majority opinion improperly affirms this error. Both rulings are contrary to the broad definition of relevant evidence under OCGA § 24-4-401.

For these reasons, I respectfully dissent in part.

I am authorized to state that Justice Boggs and Justice Bethel join in this dissent.

Decided October 5, 2020.

Murder. Chatham Superior Court. Before Judge Morse.
*Meg E. Heap, District Attorney, Noah J. Abrams, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General*, for appellant.
*David M. Burns, Jr.,* for appellee.