**FOURTH DIVISION**
**DILLARD, P. J.,**
**BROWN and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 25, 2024**

# In the Court of Appeals of Georgia

A24A0241. WIERSON v. THE STATE.
A24A0242. THE STATE v. WIERSON.

BROWN, Judge.

In 2019, Michelle Wierson was charged by indictment with first degree vehicular homicide, reckless driving, and battery. After Wierson filed a notice of intent to raise the issue of insanity, the State filed three pretrial motions, two of which are the subject of these appeals. In Case No. A24A0241, Wierson appeals from the trial court's order granting the State's motion to present evidence that Wierson was allegedly noncompliant with her prescribed medication in order to argue that her insanity was "self-induced." In Case No. A24A0242, the State cross-appeals the trial court's order allowing Wierson to present an insanity defense to the strict liability

offenses of reckless driving and vehicular homicide. For the reasons explained below, we reverse in Case No. A24A0241 and affirm in Case No. A24A0242.

> On appeal from a trial court's ruling on a motion to suppress or a motion in limine, we may consider all relevant and admissible evidence of record introduced at the motion hearing or during trial. While a trial court's findings as to disputed facts will be reviewed to determine whether the ruling was clearly erroneous, where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review. Furthermore, even if the trial court's asserted ground for denying a motion to suppress or motion in limine is erroneous, we will affirm the ruling if it is right for any reason.

(Citation and punctuation omitted.) *Flading v. State*, 327 Ga. App. 346, 348 (1) (759 SE2d 67) (2014). See also *State v. Hill*, 361 Ga. App. 230, 231 (863 SE2d 699) (2021) (an appellate court reviews the trial court's decisions on the admissibility of evidence for an abuse of discretion).

The indictment alleges that on September 27, 2018, Wierson drove a motor vehicle at an excessive speed and caused the death of a child in another vehicle. The battery charge is predicated on Wierson allegedly scratching an off-duty police officer who tried to assist on the scene. It is undisputed that Wierson previously was

diagnosed with bipolar disorder and was prescribed medication, and that at the time of the collision, Wierson was rushing to her daughter's school in the belief that her daughter was in danger.

Wierson filed a "Notice of Intention of Defense to Raise Issue of Insanity." See Uniform Superior Court Rule 31.1 and 31.5. Following this notice, the trial court granted the State's motion for an independent psychological evaluation pursuant to OCGA § 17-7-130.1.[1] Both the court-appointed expert and the expert retained by the defense concluded that at the time of the crash, Wierson, because of her mental illness, did not have the capacity to distinguish between right and wrong in relation to the alleged offenses and acted as she did because of a delusional compulsion which overmastered her will to resist committing the alleged acts. In short, both experts opined that Wierson met the two statutory definitions of insanity.

The State filed a "Motion in Limine to Determine Pretrial Admissibility of Medication Noncompliance," asking that it be allowed to present evidence that Wierson was noncompliant with her prescribed medications and to argue that her

---

[1] OCGA § 17-7-130.1 provides that "[w]hen notice of an insanity defense is filed, the court shall appoint at least one psychiatrist or licensed psychologist to examine the defendant and to testify at the trial."

noncompliance should be a factor considered in determining criminal responsibility. The State asked that the jury be allowed to consider medication noncompliance "just as if the issue were voluntary intoxication or other voluntary incapacitation." It further asserted that "the jury should be instructed that while the [experts] were not allowed to consider medication noncompliance, the jury is allowed to do so. . . ." The State specifically sought to introduce the following evidence: (1) a note on Wierson's intake chart at Ridgeview Institute that Wierson's family member said Wierson had not taken her medication for a period of time leading up to the incident, and (2) a Grady Hospital urinalysis following the incident showing that at least one of Wierson's prescribed medications was not detectable in her blood.

Simultaneously, the State filed a motion to restrict Wierson from asserting an insanity defense to the charges of reckless driving and vehicular homicide predicated on reckless driving because they are "strict liability" offenses. Based on this argument, the State filed a third motion to sever the battery charge.

Following a hearing on the State's motions, the trial court issued three orders: an order granting the State's motion with regard to medication noncompliance; an order denying the State's motion to preclude Wierson from asserting an insanity

4

defense to the charges of reckless driving and vehicular homicide; and an order granting the State's motion to sever and try separately the battery charge. The trial court granted a certificate of immediate review of its first order, and this Court granted Wierson's application for interlocutory review. The State then filed a cross-appeal from the trial court's second order pursuant to OCGA § 5-7-1 (c). In Case No. A24A0241, Wierson appeals the first order, and in Case No. A24A0242, the State appeals the second order.

*Case No. A24A0241*

Wierson contends that evidence of medication noncompliance[2] is not relevant to whether she meets the statutory definition of insanity. The State counters that "[t]he trial court correctly found the issue of medication compliance will be relevant to the jury's determination [of] whether [Wierson's] delusions were the result of 'circumstances beyond the actor's control or if they were self-induced.'"[3]

---

[2] Wierson disputes that she was not compliant and asserts that she had been taking her medication as prescribed.

[3] We thank the Georgia Association of Criminal Defense Lawyers and the Georgia Psychiatric Physicians Association for their amicus briefs.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OCGA § 24-4-401. "Although this relevance standard is a liberal one, it is not meaningless or without boundaries. Any evidence that fails to meet this standard will be barred by OCGA § 24-4-402 . . . which provides, without exception, that 'evidence which is not relevant shall not be admissible.'" (Citation and punctuation omitted.) *McIver v. State*, 314 Ga. 109, 145 (3) (a) (875 SE2d 810) (2022). Thus, "evidence that does not bear directly or indirectly on the questions being tried should be excluded as irrelevant." (Citation and punctuation omitted.) *Smith v. Saulsbury*, 286 Ga. App. 322, 325 (2) (649 SE2d 344) (2007). Accord *Mark v. Agerter*, 332 Ga. App. 879 (775 SE2d 235) (2015). We should "begin our analysis of this [evidence] by identifying the 'fact that is of consequence' under [OCGA § 24-4-401]." *Martinez-Arias v. State*, 313 Ga. 276, 285 (3) (869 SE2d 501) (2022).

According to the trial court's order, the State "indicated that it does not intend to call an expert to rebut" the experts' findings that Wierson met the two statutory

definitions of insanity. In granting the State's motion to introduce evidence of Wierson's alleged medication noncompliance, the trial court reasoned:

> [I]t is clear that there is likely to be evidence that the Defendant may have brought about the mental health episode and delusions through a willful failure to adhere to her medication regimen. Further, the Defense has already secured evidence to rebut the State's claims of noncompliance. . . . Any evidence of medication noncompliance or compliance by either the State or Defense is relevant to the question of whether the Defendant's mental health episode and delusions were brought upon by circumstances beyond the actor's control or if they were self-induced. Having found that the evidence is relevant, the [c]ourt further finds that its probative value is not substantially outweighed by the danger of unfair prejudice.

In other words, the trial court considered only whether evidence of Wierson's medication noncompliance was relevant to the question of whether Wierson's insanity was self-induced.

For the first time on appeal, the State asserts that "[e]vidence of medication noncompliance will be highly probative to the jury's inquiry into [Wierson's] state of mind at the time of the collision" and relevant to Wierson's intent in connection with the charges against her. Thus, there are two potential facts of consequence at issue in

this case: (1) whether Wierson's delusional compulsion or mental incapacity was "self-induced" and (2) Wierson's intent. We address each in turn.

(a) *Whether Wierson's delusional compulsion or mental incapacity was "self-induced."*

Georgia law recognizes two insanity defenses, codified in OCGA §§ 16-3-2 and 16-3-3. See OCGA § 17-7-131 (a) (1) (defining "[i]nsane at the time of the crime" as "meeting the criteria of Code Section 16-3-2 or 16-3-3"); *In the Interest of T. B.*, 313 Ga. 846, 849 (2) (874 SE2d 101) (2022). The former recognizes an insanity defense based on mental incapacity, providing:

> A person shall not be found guilty of a crime if, at the time of the act, omission, or negligence constituting the crime, the person did not have mental capacity to distinguish between right and wrong in relation to such act, omission, or negligence.

The latter recognizes an insanity defense based on delusional compulsion, providing:

> A person shall not be found guilty of a crime when, at the time of the act, omission, or negligence constituting the crime, the person, because of mental disease, injury, or congenital deficiency, acted as he did because of a delusional compulsion as to such act which overmastered his will to resist committing the crime.

8

"A defendant claiming insanity has the burden of proving this affirmative defense by a preponderance of the evidence[.]" *Foster v. State*, 283 Ga. 47, 48 (1) (656 SE2d 838) (2008). "At the trial of a criminal case in which the defendant intends to interpose the defense of insanity, evidence may be introduced to prove the defendant's sanity or insanity at the time at which he is alleged to have committed the offense charged in the indictment or information." OCGA § 17-7-130.1.[4] "The law adjudges criminal liability of the person according to the person's state of mind at the time of the act[.]" *Kirkland v. State*, 166 Ga. App. 478, 480 (1) (304 SE2d 561) (1983). "Proving that a defendant was insane at the time he or she committed acts which would otherwise constitute a crime, during the innocence/guilt phase of the trial, constitutes a complete defense to criminal liability." *Henry v. State*, 265 Ga. 732, 740 (9) (462 SE2d 737) (1995). See *Foster*, 283 Ga. at 48 (1) ("A person who is legally insane at the time of a crime, i.e., one who does not have the mental capacity to distinguish between right and wrong or who acts because of a delusional compulsion, is not guilty of that crime. OCGA §§ 16-3-2, 16-3-3.").

---

[4] The criminal procedures for presenting and adjudicating an insanity defense are found in Title 17, Chapter 7, Article 6, Part 2. See OCGA §§ 17-7-130.1 and 17-7-131.

Wierson contends that allowing the State to argue that she is not entitled to an insanity defense based on alleged medication noncompliance creates an exception not found in the clear language of the insanity defense statutes. We agree.

"When we consider the meaning of a statute, we must presume that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its plain and ordinary meaning." (Citation and punctuation omitted.) *Bell v. Gilder Timber Co.*, 337 Ga. App. 47, 49 (785 SE2d 682) (2016). The statutes at issue are clear and unambiguous: a defendant shall not be found guilty of a crime if, at the time of the act, she lacks mental capacity to distinguish between right and wrong or acts because of a delusional compulsion in relation to such act. OCGA §§ 16-3-2; 16-3-3. To conclude that a defendant may still be found guilty of a crime if her mental incapacity or delusional compulsion can be attributed to medication noncompliance would be to write an exception into the statutes, which this Court is not authorized to do. See *White v. State*, 305 Ga. 111, 118 (2) (823 SE2d 794) (2019) (holding, inter alia, that Court of Appeals was not authorized to write a relevance exception into the Rape Shield Statute, OCGA § 24-4-412); *Bell*, 337 Ga. App. at 49 (although appellant presented a "compelling policy argument as to why an exception

[to statute of limitation] should be created," Court of Appeals would not construe

statute "to force an outcome that the legislature did not expressly authorize"). See

also *Robins Fed. Credit Union v. Brand*, 234 Ga. App. 519, 520-521 (2) (507 SE2d 185)

(1998) (judicially created exceptions are not favored under Georgia law). It follows

that whether a defendant's insanity can be characterized as "self-induced" based on

medication noncompliance is not a fact that is of consequence and evidence offered

*for this purpose* should be excluded as irrelevant.[5]

---

[5] The Hawaii Supreme Court reached a similar conclusion based on similar reasoning in *State v. Eager*, 140 Haw. 167, 175 (III) (B) (398 P3d 756) (2017). In that case, the defendant asserted Hawaii's verison of the insanity defense and following a bench trial, the trial court found the defendant guilty, concluding that "'any disease, disorder, or defect the Defendant may have been suffering from at the time of the assault was self-induced and the product of the [d]efendant's refusal to take his prescribed medication and his use of marijuana.'" Id. at 168. On appeal, the Hawaii Supreme Court determined that the failure to take medication may not be considered in determining the availability of the defense of lack of penal responsibility due to a mental disease, disorder, or defect based on the plain language of Hawaii's insanity defense statute which provides: "A person is not responsible, under this Code, for conduct if at the time of the conduct as a result of physical or mental disease, disorder, or defect the person lacks substantial capacity either to appreciate the wrongfulness of the person's conduct or to conform the person's conduct to the requirements of law." Id. at 176 (III) (B), citing HRS § 704-400 (1). As in this case,

> [the State] argues that [the defendant's failure to take his prescribed medication] was a volitional act on his part and should not absolve him of penal responsibility. In other words, the State argues that even though [the defendant] was psychotic at the time of the incident, he should be held responsible because his psychosis stemmed from the "volitional

In support of its position that "an otherwise criminally insane defendant can be held culpable for crimes that are the result of the defendant's intentional acts that result in psychosis," the State points to *Bailey v. State*, 249 Ga. 535 (291 SE2d 704) (1982), and *Mitchell v. State*, 187 Ga. App. 40 (369 SE2d 487) (1988). In *Bailey*, the defendant was convicted of murdering his wife and his tenant's boyfriend. The defense stipulated that the defendant was sane at the time of the shooting under the "'right-wrong'" insanity defense, but "contended by plea that [he] shot his victims while suffering under a delusional compulsion." Id. at 536 (1). Two psychiatrists testified that the defendant was a diagnosed chronic paranoid schizophrenic; that he had perceived he was being confronted with a life-threatening situation although reality was otherwise; that he had overreacted based on his perception; and that because of his mental condition he had reacted more strongly and defensively, and his reactions had been more exaggerated, than those of a normal person. Id. at 537 (1). The trial court refused to sustain the plea or to charge the law of delusional compulsion. Id. On appeal, the Supreme Court found no error, stating that the

act" of not taking medication.
(Punctuation omitted.) Id. at 175 (III) (B). The Hawaii Supreme Court concluded that the "State's contention that such a 'volitional act' can give rise to penal responsibility has no basis in [Hawaii's insanity defense statute]." Id.

12

defendant acted "[c]ontrary to his physicians' advice to avoid highly stressful confrontations," and that

> [i]f, in fact, [the defendant] suffered from a delusion arising from his confrontation with [the tenant] which properly would invoke Code Ann. § 26-703,[6] then it must be said that he brought that delusion about with as much premeditation as a chronic alcoholic who, in the same circumstances, might have prepared himself for the impending confrontation by imbibing alcohol to excess.

Id. at 537-538 (1).

While *Bailey* includes some broad statements about a defendant's voluntary and intentional inducement of a delusion, we must keep in mind that the actual holding of *Bailey* was merely that the particular facts at issue authorized the trial court to refuse "to sustain the plea" of insanity and refuse "to charge [the jury on] the law of delusional compulsion." 249 Ga. at 536-537 (1). "[A] decision's holding is limited to the factual context of the case being decided and the issues that context necessarily raises. Language that sounds like a holding — but actually exceeds the scope of the case's factual context — is not a holding no matter how much it sounds like one." *Schoicket v. State*, 312 Ga. 825, 832 (1) (865 SE2d 170) (2021). See also *Am.*

---

[6] This Code section tracked the language of OCGA § 16-3-3.

*Anesthesiology of Ga. v. Northside Hosp.*, 362 Ga. App. 350, 357 (1) (867 SE2d 531) (2021). The holding in *Bailey* was simply that the particular facts of that case did not justify a jury charge on delusional compulsion. 249 Ga. at 536-537 (1). That is not the issue presented in this case, and accordingly, *Bailey* does not control.[7]

In *Mitchell*, evidence was presented that the defendant "would never take his medication for his schizophrenia, but would continually get high sniffing glue, or paint, or even bug spray." (Punctuation omitted.) 187 Ga. App. at 40. The trial court charged the jury on insanity, mental illness, voluntary intoxication, and that "a person who suffers periodic delusional states may not intentionally and voluntarily induce his delusions or mental disorder and then be excused for a criminal act committed during such delusional episode." Id. at 44-45 (6). The jury requested clarification on whether

---

[7] The State also points to a portion of the pattern jury charge on insanity, delusional compulsion, which appears to be based on certain language in *Bailey*. Pattern Charge 3.80.30, Suggested Pattern Jury Instructions, Volume II, Criminal Cases (4th ed. 2024). We note that "[t]hese instructions are submitted as suggestions only. They have not been submitted to or approved by the appellate courts of Georgia, although many have been approved in principle in specific cases." Preface, Suggested Pattern Jury Instructions, Volume II, Criminal Cases (4th ed. 2024). See, e.g., *Smith v. Finch*, 285 Ga. 709, 712 (1) (681 SE2d 147) (2009) (disapproving a portion of different pattern jury instruction as inconsistent with Georgia law). This charge has not been approved by either this Court or our Supreme Court, and we need not decide as much today as that is not the issue before us.

the failure to take medication relates to the evaluation of that person's sanity. Id. at 45 (6). The trial court declined to answer the inquiry, considering it one of the matters to be deliberated by the jury. Id. This Court stated that "[w]hile Mitchell correctly points out that when the jury is confused and in doubt and requests further instructions on a particular point, it is the duty of the court to further instruct them, we agree with the trial court that answering the particular inquiry in this case would have stepped over into the province of the jury." (Citation and punctuation omitted.) Id. Like *Bailey*, *Mitchell* did not address the precise issue raised here — specifically, whether the State may introduce evidence of medication noncompliance to show that the defendant's insanity is "self-induced." "Issues merely lurking in the record, neither brought to the court's attention nor expressly ruled upon, have not been decided so as to constitute precedent." (Citation and punctuation omitted.) *Collins v. Schantz*, 369 Ga. App. 282, 287 (2), n.5 (893 SE2d 185) (2023).

In sum, we conclude that whether Wierson's delusional compulsion or mental incapacity was "self-induced" is not "a fact that is of consequence to the determination of the action," based on the plain language of OCGA §§ 16-3-2 and 16-

15

3-3. Thus, the trial court erred in granting the State's motion to admit the evidence for this purpose.

(b) *Intent.* Under OCGA § 40-6-390 (a), "[a]ny person who drives any vehicle in reckless disregard for the safety of persons or property commits the offense of reckless driving." Under OCGA § 40-6-393 (a), first-degree vehicular homicide is defined as causing the death of another person through the violation of certain specified traffic laws, including, as charged in this case, reckless driving. "[F]irst-degree vehicular homicide and reckless driving charges are strict liability offenses, meaning that they can be committed without a culpable mental state." (Citation and punctuation omitted.) *Holley v. State*, 363 Ga. App. 107, 111 (3) (871 SE2d 13) (2022). See also *State v. Ogilvie*, 292 Ga. 6, 8 (2) (a) (734 SE2d 50) (2012) ("unless the particular provision indicates otherwise, the traffic offenses defined in Chapter 6's Rules of the Road are 'strict liability' offenses, meaning that they can be committed without a culpable mental state") (footnote omitted); *Mitchell v. State*, 355 Ga. App. 7, 10 (2) (842 SE2d 322) (2020). The intent at issue is simply the intent to commit the act that the statute prohibits, i.e., driving in a specific way, and not the intent to commit the crime itself. *Holley*, 363 Ga. App. at 112 (3). See also *Ogilvie*, 292

Ga. at 8-9 (2) (a), citing *People v. Rostad*, 669 P2d 126, 129 (II) (Colo. 1983) ("[T]he minimal requirement for a 'strict liability' offense is proof that the proscribed conduct was performed voluntarily — i.e., that such act must be the product of conscious mental activity involving effort or determination.") (punctuation omitted).

We find this Court's analysis in *Holley* instructive in the instant case:

Here, [the defendant] was convicted both of reckless driving and of first-degree vehicular homicide predicated on reckless driving, so the intent required for reckless driving impacts both convictions. The offense of reckless driving requires proof that (a) the defendant was driving (b) "in reckless disregard for the safety of persons or property[.]" OCGA § 40-6-390 (a). Thus, to prove the offense of reckless driving as charged in the indictment, the State was required to show that [the defendant] committed a prohibited act as alleged in the indictment – either failing to yield the right of way while driving (regardless of whether [the defendant] intended to fail to yield the right of way) or using a mobile device to the point of distraction while driving (regardless of whether [the defendant] intended to be distracted) – evidencing a reckless disregard for the safety of persons or property. There is no need to establish that [the defendant] "intended" to drive "criminally negligently" or even that [the defendant] "intended" to fail to yield the right of way, become distracted by her mobile device, or put others or their property at risk.

(Citations, punctuation, and footnote omitted.) 363 Ga. App. at 113-114 (3). Here, to prove the offense of reckless driving as charged in the indictment, and thus the offense of vehicular homicide, the State must show that Wierson committed a prohibited act as alleged in the indictment — speeding. Id. Cf. *Smith v. State*, 319 Ga. App. 164, 173 (7) (a) (735 SE2d 153) (2012) (no error in trial court's charge to jury that " '[t]he moving traffic violations defined in the Official Code of Georgia Title 40, Chapter 6 are strict liability offenses,' and that the State is therefore not required to prove mental fault"; the basis for the reckless driving charge was that the defendant was driving at an excessive rate of speed, and the State presented evidence that the defendant was driving at 90 m.p.h. when she collided with the victims' vehicle); *English v. State*, 261 Ga. App. 157, 159 (2) (582 SE2d 136) (2003) ("evidence that an individual is traveling at excessive speeds, thereby endangering others on the road, is sufficient to support a conviction of reckless driving"). The State is not required to show that Wierson intended to drive criminally negligently or even intended to put others or their property at risk. See *Holley*, 363 Ga. App. at 114 (3). See also *Ogilvie*, 292 Ga. at 8 (2) ("criminal intent does not always equate to mental fault, guilty knowledge, or purposeful violation of the law"). It follows that whether Wierson had

or had not taken her medication as prescribed — or whether Wierson got behind the wheel of her car knowing she had not taken her medication as prescribed — has no bearing on the intent element of the charged crimes. Compare *People v. Unger*, 3153/2016, 2017 WL 3721467 (N.Y. App. Div., Aug. 17, 2017) (affirming the defendant's convictions for manslaughter and criminally negligent homicide based on defendant striking and killing three pedestrians with his vehicle while having seizure; evidence that the defendant had a seizure disorder, failed to take prescribed medications that day, and had a prior accident after failing to take medication "established sufficiently the requisite mens rea requirements of recklessness and negligence"). Rather, "the State meets its burden of proof as to criminal intent in strict liability traffic offenses[, as here,] if it establishes beyond a reasonable doubt that the defendant voluntarily committed the act that the statute prohibits." (Citation and punctuation omitted.) *Holley*, 363 Ga. App. at 113-114 (3). For this reason, we do not find evidence of Wierson's alleged medication noncompliance relevant for the purpose of showing her intent.

*Case No. A24A0242*

19

In Case No. A24A0242, the State appeals the trial court's second order, denying its motion to restrict Wierson from presenting an insanity defense to the counts of reckless driving and vehicular homicide predicated on reckless driving.

1. Before turning to the merits, we must address Wierson's motion to dismiss the State's appeal. Wierson contends that the State's motion was decided in the State's favor and there is "no adverse ruling to the [State]." We disagree with Wierson's characterization of the trial court's second order. The trial court specifically denied the State's motion and ruled that Wierson would be allowed to present an insanity defense to all charges in the indictment. Therefore, Wierson's motion to dismiss the State's cross-appeal is denied.

2. The State contends that because traffic offenses are "strict liability" crimes, it need only prove general criminal intent, which is, as we have already explained in Division (1) (b), simply the intent to do the act which results in the violation of the law. Thus, according to the State, an insanity defense under either OCGA §§ 16-3-2 or 16-3-3 is inapplicable.

Neither this Court nor our Supreme Court has expressly addressed whether the defense of insanity is available to strict liability traffic offenses. However, the Supreme

Court has addressed the availability of an accident defense in such cases. In *Ogilvie*, the Supreme Court of Georgia explained that because the General Assembly has plainly stated that strict liability traffic offenses are crimes, they must contain the elements required to constitute a crime as defined in OCGA § 16-2-1 (a): "A 'crime' is a violation of a statute of this state in which there is a joint operation of an act or omission to act and intention or criminal negligence." 292 Ga. at 8 (2) (a). Thus, as explained above,

> strict liability traffic offenses are not offenses with no criminal intent element. They do not require the specific intent or wrongful purpose that is an element of other crimes, but they do require the defendant to have voluntarily committed the act that the statute prohibits, which typically involves driving at a particular time and place . . . or in a particular way[.]

(Citation and punctuation omitted.) Id. at 9 (2) (a). Because the defense of accident "applies where the evidence negates the defendant's criminal intent,[8] whatever that intent element is for the crime at issue[,] . . . a jury charge on the defense of accident to a strict liability traffic offense is available [but] only where there is evidence,

---

[8] OCGA § 16-2-2 provides that "[a] person shall not be found guilty of any crime committed by misfortune or accident where it satisfactorily appears there was no criminal scheme or undertaking, intention, or criminal negligence."

21

however slight, that the defendant did not voluntarily commit the prohibited act." Id. at 9 (2) (b). See also *Mitchell*, 355 Ga. App. at 11 (2) ("The defense must be based on evidence that the prohibited act was committed involuntarily, for example, because of an unforeseeable physical ailment or external force.") (citation and punctuation omitted). Based on this reasoning — in conjunction with the plain language of the insanity defense statutes that "[a] person shall not be found guilty of a *crime*" — we conclude that the defense of insanity may be asserted in strict liability traffic offense cases. (Emphasis supplied.) OCGA §§ 16-3-2; 16-3-3.

3. For the first time on appeal, the State contends that Wierson's delusion, if true, would not have justified Wierson's actions, and thus Wierson does not meet the criteria for an insanity defense under OCGA § 16-3-3. See *Shaw v. State*, 340 Ga. App. 749, 764 (3) (b) (798 SE2d 344) (2017) ("[a] finding of insanity based upon OCGA § 16-3-3 requires proof that (1) the accused acted under a delusional compulsion; (2) the criminal act was connected with the delusion; and (3) the delusion related to a fact which, if true, would have justified the act") (citation and punctuation omitted). This argument was neither raised below nor ruled on by the trial court. We will not address it for the first time on appeal. See *State v. Stephens*, 310 Ga. 57, 61 (2) (849 SE2d 459)

(2020) (refusing to consider for the first time on appeal State's alternative arguments because appellate review is limited to the trial court's ruling on the State's pretrial motion in limine); *State v. Jennings*, 362 Ga. App. 790, 795 (1) (b) (869 SE2d 183) (2022) (in State's appeal of trial court's grant of motion to suppress, Court of Appeals would not address State's argument that was not made to trial court below).

*Judgment affirmed in Case No. A24A0242. Judgment reversed in Case No. A24A0241. Dillard, P.J., concurs in both cases. Padgett, J., concurs in Case No. A24A0242 and dissents in Case No. A24A0241.*

# In the Court of Appeals of Georgia

A24A0241, A24A0242. WIERSON v. STATE; and vice versa.

PADGETT, Judge.

I fully concur with the decision in Case No. A24A0242. However, I must respectfully dissent from the majority's opinion in Case No. A24A0241.

The majority is correct in noting that, under OCGA §§ 16-3-2 and 16-3-3, if the defendant lacks the mental capacity to distinguish between right and wrong or acts because of a delusional compulsion, the defendant cannot be found guilty of a crime. Those statutes do not reference any additional requirements or preconditions other than an analysis of the defendant's mental status at the time of the crime.

The Supreme Court of Georgia was equally aware of those principles and the content of the relevant statutes when it held:

> To what we held in *Taylor* and *Graham* must be appended the necessary implication of Code Ann. § 26-703 that a chronic paranoid schizophrenic may no more voluntarily and intentionally induce his delusion than a chronic alcoholic voluntarily may induce his drunkenness then expect the homicide to be excused rather than criminal.

*Bailey*, 249 Ga. at 537 (1). While this case does not involve the consumption of alcohol and Wierson is alleged to suffer from bipolar disorder as opposed to schizophrenia, I read the principles announced in *Bailey* to be applicable to this case.

The decision in *Bailey* was announced over three decades ago. The majority is correct to note that when engaging in statutory interpretation, we are to afford the statutory text its plain and ordinary meeting. *Bell v. Gilder Timber Co.*, 337 Ga. App. 47, 49 (785 SE2d 682) (2016). It is clear that the plain language of OCGA §§ 16-3-2 and 16-3-3 does not address the relevance of voluntary induction of a delusion. However, there is another principle of statutory construction that is also applicable.

The legislature is presumed to have knowledge of judicial construction of a statute made by appellate courts. *RadioShack Corp. v. Cascade Crossing II, Inc.*, 282 Ga. 841, 842-843 (653 SE2d 680) (2007). The legislature has taken no action in light of the Supreme Court's opinion in *Bailey* since it was published more than three decades ago. "[O]nce the court interprets the statute, 'the interpretation . . . has become an integral part of the statute.' This having been done, (over a long period of history) any subsequent 'reinterpretation' would be no different in effect from a judicial alteration of language that the General Assembly itself placed in the statute[.]'" *Harvey v. J.H. Harvey Co.*, 276 Ga. 762, 763 (582 SE2d 88) (2003) (citation and punctuation omitted).

If *Bailey* was wrongly decided as claimed by Wierson, the determination of whether to abandon that decision lies with the Supreme Court. Wierson claims that the holding in *Bailey* "can only be read as an example of judicial activism." Whether that accusation is valid is a question that the Supreme Court must answer. I believe that the holding in *Bailey* controls this case. Therefore, I dissent.