**SECOND DIVISION
DOYLE, P. J.,
DAVIS, J., and SENIOR JUDGE FULLER**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**June 23, 2026**

# In the Court of Appeals of Georgia

A26A0567. LETT v. THE STATE.

DAVIS, Judge.

Ashley Lett seeks review after a Cherokee County jury found her guilty of battery, family violence, and guilty, but mentally ill, of aggravated assault, family violence, obstruction of an officer, and terroristic threats. In two related enumerations of error, Lett argues that the trial court erred in instructing the jury on insanity and voluntary intoxication. For the reasons that follow, we affirm Lett's convictions, sentence, and the denial of her motion for new trial.

Viewed in the light most favorable to the verdicts,[1] the evidence presented at trial showed the following. Lett lived with her parents and her twin daughters, J. L.

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

and Ja. L., in Cherokee County, Georgia. Lett was diagnosed as bipolar and schizoaffective and had been previously institutionalized "half a dozen" times. On November 5, 2023, Lett's mother told Ja. L. to go to a friend's house because Lett was having a "manic episode." Ja. L. went outside to the back porch where Lett was, and she noticed that Lett had been drinking and had alcohol near her. Ja. L. spoke with Lett, kissed her, and went to her friends's house. J. L. also decided to stay at a friend's house, so she grabbed her bag and went to say goodbye to Lett. J. L. said that Lett was angry and began to chase her inside the house. Lett "brought [J. L.] down to the floor" and choked her, which caused her to temporarily lose consciousness.[2] Lett's father heard a noise, came out of his bedroom, and saw Lett and J. L. "tumbling forward." According to Lett's father, Lett "couldn't stop" and appeared to be "demon-possessed," and he was injured when he reached down to separate Lett and J. L.

Lett's mother called law enforcement, and Deputy Yee Lee of the Cherokee County Sheriff's Office and three other officers arrived at the home.[3] Deputy Lee

---

[2] J. L. and Ja. L. recounted the incident to a forensic interviewer, and their interviews were entered into evidence and played for the jury.

[3] Two 911 calls were entered into evidence and played for the jury.

observed Lett screaming and punching the windows at the back of the home. As the officers attempted to open the door to the back porch where Lett was located, she started punching and kicking the officers.[4] One of the officers testified that Lett was very agitated and kept "muttering" to herself and calling J. L. names. The officer also testified that Lett appeared to be under the influence of alcohol and that the "prevailing opinion of everyone present" was that Lett was "crazy."

Lett was indicted on one count each of aggravated assault, family violence (OCGA § 16-5-21(a)(3) &(i)), false imprisonment (OCGA § 16-5-41), obstruction of an officer (OCGA § 16-10-24(b)), and terroristic threats (OCGA § 16-11-37(b)), and two counts of battery, family violence (OCGA § 16-5-23.1(f)). Before trial, Lett filed written requests to charge the jury on the two insanity defenses of mental capacity and delusional compulsion.[5] During the charge conference, the trial court ruled that it would not charge the jury on delusional compulsion because there was no evidence to warrant the charge but that it would charge the jury on mental capacity. After trial, the

---

[4] Bodycam and dash cam footage of the officers' interaction with Lett was entered into evidence and played for the jury.

[5] OCGA § 16-3-2 governs the mental capacity defense, and OCGA § 16-3-3 governs the delusional compulsion defense.

jury found Lett guilty of one of the battery family violence counts and guilty but mentally ill of aggravated assault, family violence, obstruction of an officer, and terroristic threats, but it acquitted her of the remaining offenses. The trial court imposed a 20-year sentence, with the first 5 years to be served in confinement and the remainder on probation.[6] Lett filed a motion for new trial, which the trial court denied after a hearing. This appeal followed.

In two related claims of error, Lett argues that the trial court erred in instructing the jury on insanity and voluntary intoxication. She argues that the Supreme Court of Georgia's decision in *State v. Wierson*, 321 Ga. 597 (916 SE2d 389) (2025), which was decided after her trial[7] and changed the interplay between the insanity and voluntary intoxication defenses, applies to her case and requires a new trial. After a careful review of the record, we conclude that the trial court did not plainly err in charging the jury.

Because Lett did not object to the jury charges as given, we review this claim for plain error only. *Ulbrich v. State*, 363 Ga. App. 503, 507(2) (870 SE2d 859) (2022).

---

[6] The trial court merged Lett's battery, family violence, conviction with her conviction for aggravated assault, family violence, for sentencing purposes.

[7] Lett's trial was held on October 24, 2024, and October 25, 2024.

First, there must be an error or defect – some sort of deviation from a legal rule – that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error – discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings. The Court need not analyze all of the elements of the plain error test when the appellant fails to establish one of them.

*Cabrera-Zamarripa v. State*, 371 Ga. App. 598, 602–03(2) (901 SE2d 737) (2024). And in the context of plain error review based on a subsequent change in the law,

we consider whether an error was 'plain' by looking to the law at the time of appellate review rather than at trial. This timing rule is a species of the long established general rule that an appellate court must apply the law in effect at the time it renders its decision. This plain–error version of that general rule is often applied when the difference between the law at trial and the law on appellate review is the result of an intervening judicial decision. Such a decision may settle an unsettled question about how to interpret a particular statute, or it may correct an incorrect interpretation of a statute.

5

*Profet v. State*, 322 Ga. 731, 739-40(5) (922 SE2d 33) (2025) (citation modified).

Moreover, "[w]hen evaluating claims of instructional error, we examine the jury charge as a whole." *Gravitt v. State*, 322 Ga. 831, 842(3)(a) (922 SE2d 392) (2025). "A request to charge must be legal, apt, and precisely adjusted to some principle involved in the case and be authorized by the evidence. A trial court is authorized to give a requested jury instruction as long as slight evidence supports the theory of the charge." *Painter v. State*, S26A0382, slip op. at 2 (Ga. Apr. 21, 2026) (2026 WL 1073037). Still, "[t]he refusal to give a requested charge, even though it is a correct statement of law and pertinent and material to an issue in the case, is error only if it contains information that is not substantially covered by the charge actually given." *Gravitt*, 322 Ga. at 842(3)(a). "And so when a requested jury instruction adds no essential point of law to the existing instructions, it is not error for the trial court to decline to give it." Id. (citation modified). With all of these principles in mind, we turn to the issues raised in this appeal.

"In Georgia, a defendant is presumed to be sane. To overcome this presumption, a defendant wishing to assert an insanity defense has the burden to prove by a preponderance of the evidence that he was insane at the time the crime was

6

committed." *Painter*, slip op. at 2.[8] Georgia law recognizes two forms of the insanity defense, one of which is the mental capacity defense. Id. at slip op. at 2.[9] Under OCGA § 16-3-2, "[a] person shall not be found guilty of a crime if, at the time of the act, omission, or negligence constituting the crime, the person did not have mental capacity to distinguish between right and wrong in relation to such act, omission, or negligence." The Supreme Court of Georgia recently addressed the interplay between the insanity defenses and voluntary intoxication in *Wierson*. There, a defendant with bipolar disorder caused a fatal car accident, and the State sought to introduce evidence

---

[8] Insanity is distinguished from other affirmative defenses which require the State to disprove an affirmative defense beyond a reasonable doubt. *Dixon v. State*, 217 Ga. App. 267, 268(1) (456 SE2d 758) (1995). Contrary to Lett's claim, we have been clear that the State does not have to disprove insanity beyond a reasonable doubt "because the law presumes sanity[,] [and thus] no new burden of proof is imposed on the State by an affirmative plea of insanity." Id.

[9] As stated above, and contrary to Lett's claim, the trial court did not charge the jury on the delusional compulsion defense under OCGA § 16-3-3 because it determined that no evidence was presented to support the charge, and Lett does not enumerate that ruling by the trial court as error on appeal. See *Evans v. State*, 360 Ga. App. 596, 605(7) (859 SE2d 593) (2021) (a defendant "may not use her brief to expand her enumeration of errors by arguing the incorrectness of a trial court ruling not mentioned in the enumeration of errors."). Consequently, to the extent that any of Lett's arguments can be construed as arguing that the jury instructions failed to comply with *Wierson* as to the delusional compulsion defense, those arguments present nothing for our review, and we only address Lett's arguments as it pertains to the mental capacity defense.

that prior to the accident she had intentionally stopped taking her psychiatric medication. *Wierson*, 321 Ga. at 597. After analyzing the plain language of OCGA §§ 16-3-2 and 16-3-3, the Court first concluded that "the insanity defenses are available even to a person who has 'voluntarily' induced the relevant mental state." Id. at 604(2)(a). Thus, the Court concluded that whether the defendant in *Wierson* stopped taking her medication before the accident was not relevant to the insanity defenses. Id. The Court then determined that its construction of OCGA §§ 16-3-2 and 16-3-3 was in conflict with its prior decision in *Bailey*,[10] id. at 604(2)(b), and after applying stare decisis principles, the Court overruled *Bailey's* holding that insanity defenses "are not available to a defendant who intentionally or voluntarily induced the relevant mental state." Id. at 607–10(2)(b) (quotation marks omitted).

But as noted by the State, after *Wierson*, the Supreme Court of Georgia analyzed the issue of jury instructions regarding voluntary intoxication and the insanity defenses. In *Gravitt*, the defendant requested that the trial court charge the jury on both insanity defenses, voluntary intoxication, and the following non-pattern instruction:

---

[10] Lett acknowledges that at the time of her trial, *Bailey v. State*, 249 Ga. 535 (291 SE2d 704) (1982), was controlling precedent.

8

However, if you determine that a person is legally insane when sober, that person remains legally insane when intoxicated, even if the insanity is intensified by drugs or alcohol. One who is legally insane is not responsible for acts committed in their insanity, regardless of whether that person is intoxicated or sober.

*Gravitt*, 322 Ga. at 842–46(3)(b)-(d)(i). The trial court charged the jury on both insanity defenses and voluntary intoxication, but it denied the defendant's request to charge the jury on the non-pattern instruction because it was included in the general charges on insanity. Id. On appeal, our Supreme Court affirmed the trial court's ruling. Id. at 847–48(3)(d)(ii). The Court reasoned that the pattern instructions for the insanity defenses explained the conditions under which a defendant is excused from liability by reason of insanity, and that the pattern charge for voluntary intoxication makes it clear that a person who is voluntarily intoxicated "is criminally responsible for [his or her] acts *to the same extent as if the person were sober*." Id. at 848(3)(d)(ii). Thus, the instructions as a whole charged the jury on the principle that "a person who is insane when sober does not lose the benefit of that defense when temporarily voluntarily intoxicated." Therefore, the Court concluded that it was not error for the

trial court to deny the defendant's request for the non-pattern instruction because it was adequately included in the pattern instructions. Id.

Here, the trial court gave the jury the following pattern instructions on voluntary intoxication and the mental capacity defense:

> Voluntary intoxication is not a defense to a crime. *If the [d]efendant, when sober, could reason and distinguish between right and wrong,* she voluntarily became intoxicated and then committed a crime while intoxicated, *she is responsible for the crime just as if she had been sober at the time she committed the crime.*
>
> Every person is presumed to be of sound mind and discretion. However, this presumption may be rebutted. If you find that at the time of the alleged criminal acts the [d]efendant was suffering from insanity, mental illness or intellectual disability, then you shall determine whether the [d]efendant is not guilty, not guilty by reason of insanity, guilty beyond a reasonable doubt, guilty beyond a reasonable doubt but mentally ill, or guilty beyond a reasonable doubt but with intellectual disability.
>
> The law makes a ... distinction between being insane at the time of the commission of the alleged criminal acts and being mentally ill or with intellectual disability at the time of the alleged acts. Therefore, it is necessary that you understand this distinction.

*A person shall not be found guilty of a crime if, at the time the acts constituting the crimes, that person did not have the mental capacity to distinguish between right and wrong in relation to the acts.* In regards to the question of sanity or insanity at the time of the alleged criminal acts, there is a test to determine whether the person is suffering such a degree of insanity that the person is not capable of committing a crime. The test is whether the insanity was such that it deprived that person of the mental capacity to distinguish between right and wrong in relation to the acts that the person allegedly committed.

The perpetrator may be what is commonly referred to as insane in a loose and general sense, yet in the eyes of the law she may be sane and responsible so far as the acts in question are concerned, if at the time of the commission of the alleged acts the accused had sufficient capacity to distinguish between right and wrong of the particular acts. This is a question of fact to be determined by you.

Mere weak-mindedness, mental abnormality, intellectual disability, or mental state shown only by repeated unlawful or antisocial conduct which does not amount to insanity is not a defense to a crime if the person had the mental capacity to distinguish between right and wrong in relation to the alleged offenses when the alleged offenses were committed.

*Insanity may be only a temporary malady and if the accused did not have sufficient mental capacity to distinguish between right and wrong with*

*reference to the acts alleged in this indictment at the time that the act was committed, then the accused would not be criminally responsible.* The test of criminal responsibility is the condition of the mind of the accused at the time of the commission of the alleged acts.

If a person of unsound mind has intervals of understanding, during which that person can distinguish between the right and wrong of a particular act, then that person shall answer for that act if it was committed during those periods of understanding. If due to an affliction of the mind, a person's mind is so impaired that the person is incapable of forming the intent to commit the act with which she is charged or to understand that a certain consequence would likely result from those acts, then that person would not be criminally responsible for the acts.

The [d]efendant has the burden of proving insanity by a preponderance of the evidence. If you believe beyond a reasonable doubt that the [d]efendant committed the acts charged in this indictment -- in this bill of indictment, but also believe by a preponderance the evidence that at the time of the commission of these acts the [d]efendant was mentally incapable of distinguishing between right and wrong regarding these particular acts, then it would be your duty to acquit the [d]efendant because of insanity. (Emphasis supplied).

We conclude that Lett cannot establish plain error in the trial court's instructions. Although *Wierson* applies in this direct appeal,[11] she cannot show a clear or obvious error because the instructions as a whole charged the jury in accordance with *Wierson*. As reflected above, the jury was instructed that voluntary intoxication was not a defense to the crimes *if, when sober*, Lett was able to distinguish between right and wrong at the time of crimes. The jury was also instructed on the mental capacity defense – that Lett was not responsible for the crimes if it determined that she could not distinguish between right and wrong at the time of the crimes. Thus, as a whole, the jury was instructed that Lett could not be held responsible for the crimes if even when sober, she could not distinguish between right and wrong, irrespective of her voluntary intoxication. The instructions, in essence, accurately reflected the holding of *Wierson*, and under *Gravitt*, Lett cannot demonstrate a clear or obvious error in the jury charges.[12] See *Gravitt*, 322 Ga. at 842–48(3)(d) (trial court's

---

[11] See *Austin v. State*, 275 Ga. 346, 347(2) (566 SE2d 673) (2002) (subsequent change in the law regarding jury instructions after the defendant's convictions applied in the defendant's direct appeal proceedings).

[12] To the extent that Lett relies on the prosecutor's alleged misstatement of the law in support of her claim, as explained above, the instructions as a whole charged the jury with the holding of *Wierson*. Also, the trial court instructed the jury that its verdict had to be based on the evidence in accordance with the laws given to them, and

instructions on voluntary intoxication and the insanity defenses as a whole charged the jury on the principle that a person who is legally insane is not responsible for acts committed in their insanity regardless of whether that person is intoxicated or sober). Consequently, Lett has failed to show that the trial court plainly erred in charging the jury in this matter.

Accordingly, for the foregoing reasons, we affirm Lett's convictions, sentence, and the denial of her motion for new trial.

*Judgment affirmed. Doyle, P. J., and Senior Judge C. Andrew Fuller.*

---

we have been clear that "qualified jurors under oath are presumed to follow the court's instructions." *Rouse v. State*, 373 Ga. App. 838, 841(1)(b) (910 SE2d 245) (2024).